[No. 7243.   Decided June 24, 1908.]

CHRIS SEEWALD, *Appellant*, v. HARDING LUMBER COMPANY, *Respondent*.[1]

MASTER AND SERVANT—NEGLIGENCE—EMPLOYMENT OF INCOMPETENT CO-SERVANT—EVIDENCE—QUESTION FOR JURY. The question of the negligence of a master in employing an incompetent engineer to run a donkey engine, used in hauling logs by a cable, is for the jury, where it appears that the engineer was a young man, about nineteen years of age, sent out by an employment office the evening before, that he was nervous and excited in attempting to operate the engine, and caused injury to the hook tender by starting the engine at full speed when directed to start it slowly; it being the master's duty to make a reasonable effort to learn his qualifications.

SAME—ASSUMPTION OF RISKS—INCOMPETENT FELLOW SERVANT. A hook tender does not, as a matter of law, assume the risk from the incompetency of the engineer of a donkey engine, where the engineer had worked but a few hours and was not known to the hook tender, whose duties in the main called him to a place where he could not carefully observe the engineer's manner of work.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered September 12, 1907, granting a nonsuit at the close of plaintiff's case, after a trial before the court and jury, in an action for personal injuries. Reversed.

*Leo & Cass*, for appellant.

*Blattner & Chester*, for respondent.

HADLEY, C. J.—This is an action to recover damages for personal injuries received by plaintiff while in the employ of the defendant. The cause came on for trial before a jury, and at the close of the plaintiff's testimony a nonsuit was granted and the action dismissed. The plaintiff has appealed.

There was evidence to the following effect, and for the purposes of this appeal it must be taken as true: The respond-

[1]Reported in 96 Pac. 221.

ent, at the time appellant was injured, owned and operated a logging business in Pierce county. In the logging operations a steam engine, known as a "donkey" engine, was used in moving logs from where they were cut in the woods to the mill, or to the place where they were loaded on railroad cars for transportation. The logs were drawn by means of a steel cable, operated on a drum by the donkey engine. When a log was moved, a short wire cable, called a "choker," was passed around it and fastened near the end of the log. This was attached to the main line or cable, and when the latter was wound on the drum by the engine, the log was drawn. The appellant was known as "hook tender," and it was his duty to attend to the choker and cable and fasten them to the logs in readiness for moving. It was also his duty, as the logs were drawn, to walk along with them and to direct the course of the cable and logs so as to avoid obstructions as far as practicable. By reason of intervening obstructions, it was often necessary to stop the engine and change the course of the cable. A signalman was stationed about midway between the engineer and the hook tender and so as to be in sight of each of them. According to the situation and nature of the obstructions, it was sometimes necessary to start the engine slowly and sometimes at a high rate of speed. The hook tender who was with the logs understood the situation, and gave the signal to the signalman, to be by the latter in turn given to the engineer, when to start the engine and whether to start it slowly or rapidly. The signalman was the only medium of communication between the hook tender and the engineer as to when and how the engine should be started. There was an established code of signals, well known and understood by all woodsmen. It was the duty of the engineer to observe and obey the signals, having regard both to the proper movement of the logs and the safety of the men.

Just before the injury to appellant, the engine was stopped for the purpose of readjusting the cable and choker so as to

change the course of the log being drawn and clear an obstruction. After the readjustment the signal was given in the manner aforesaid for the engineer to start the engine slowly. The situation of the log and the position of the hook tender were such that, for the log to clear and for the safety of the hook tender, it was necessary that the engine should start slowly. The appellant, as hook tender, was then about five hundred feet from the position of the engineer, and neither could see the other. The engineer, instead of starting the engine slowly as he was directed to do, started it at full speed. The sudden and unexpected jerk given the log caused it to dislodge a piece of timber, about eight inches in diameter and twelve feet long, and this was quickly thrown around so that it struck and broke appellant's leg, the fracture being a compound one. If the engine had been started slowly and in obedience to the signal given to the engineer, the accident would not have occurred and the appellant would not have been injured. There was testimony that the engineer then in charge was a young man, probably nineteen or twenty years of age; that he was sent out to respondent by a Tacoma employment office; that the former engineer, a competent one, was discharged, and this young man, who looked like a boy, was installed in his place the evening before this accident happened; that in attempting to operate the engine he was nervous and excited.

Incompetence of the donkey engineer and negligence of respondent in employing him constituted the ground of negligence alleged in the complaint. There was ample evidence to go to the jury as to the incompetence of the engineer, but it is contended that there was not sufficient testimony to show any negligence of respondent in the employment of the engineer and in his continuance at that post. We think, under the testimony, that question should have been submitted to the jury. It was respondent's duty to make reasonable effort to learn the qualifications of the engineer, having regard to

the safety of the other men, and it was for the jury to say whether it had learned, or by the exercise of reasonable care might have learned, of that incompetence in time to have removed him and prevented this accident. Speaking of the degree of care required of a master in the selection of servants, the court, in *Wabash R. Co. v. McDaniels*, 107 U. S. 454, 460, 2 Sup. Ct. 932, 27 L. Ed. 605, said:

"It is such care as, in view of the consequences that may result from negligence on the part of employees, is fairly commensurate with the perils or dangers likely to be encountered."

Tested by such rule, it was for the jury to say, under the evidence in this case, whether respondent exercised the degree of care required.

Respondent contends that appellant assumed the risk of danger from incompetence of the engineer, for the reason that he saw the latter's manner of operating and knew therefrom that he was incompetent. It must be remembered that the engineer had worked there but a few hours, and appellant had never known him before. Appellant's duties in the main called him to a place where he could not carefully observe the manner of the engineer, and under such circumstances it cannot be said, as a matter of law, that he had such knowledge of the incompetency as placed upon him the burden of assuming the risk of the danger from such a situation.

Under the evidence the question of contributory negligence was also for the jury. We therefore think the court erred in granting the nonsuit, and the judgment is reversed, and the cause remanded with instructions to grant a new trial.

MOUNT, DUNBAR, and FULLERTON, JJ., concur.