[No. 7546. Decided February 6, 1909.]

## N. W. PEARSON, *Respondent*, v. ALASKA PACIFIC STEAMSHIP COMPANY, *Appellant*.[1]

MASTER AND SERVANT—EMPLOYMENT OF INCOMPETENT COSERVANT—EVIDENCE—SUFFICIENCY. A master who employs a stevedore as winch driver in loading a vessel must use reasonable effort to ascertain his qualifications, and cannot escape liability by showing that there was nothing in his conduct during two hours' employment indicating incompetency, or that he was a member of a union from which defendant was under contract to exclusively employ stevedores.

SAME—EVIDENCE OF CARE IN SELECTING SERVANTS—ADMISSIBILITY. Upon an issue as to whether a master had made reasonable effort to ascertain the competency of a stevedore employed as a winch driver in loading a vessel, evidence is inadmissible that the master was under contract to employ exclusively the members of a union, and relied upon the union to furnish a competent winch driver, where it further appears that the winch driver was incompetent and that neither the master nor the union, which was his agent, made any inquiries as to the competency of the employee.

SAME—EVIDENCE OF NEGLIGENCE—EXPERTS. As opinion evidence is inadmissible where the jury can deduce reasonable inferences without special skill or knowledge, it is proper, in an action for injuries sustained by a hatch tender through the negligence of an incompetent winch tender in not properly acting upon a signal given him, to exclude expert opinions as to whether a winch driver might mistake the levers, whether one familiar with winches could determine in two hours as to the competency of the winch driver or the propriety of his operation, and whether it was proper for plaintiff to take hold of the load so as to allow himself to be caught.

[1]Reported in 99 Pac. 753.

SAME—NEGLIGENCE—EVIDENCE OF NEGLIGENT OPERATION. In an action for personal injuries sustained through the negligent operation of a winch, it is proper to exclude evidence as to how another more complicated winch of different make is operated.

TRIAL—INSTRUCTIONS—REQUESTS. It is not error to refuse instructions covered in the general charge.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $7,500 for personal injuries is not excessive where the plaintiff was a stevedore, twenty-eight years old, having an average earning capacity of $1,200 per year, and his knee cap and elbow joint were fractured, bones had to be removed, and he lost the use of his arm, so that his earning capacity at manual labor was practically destroyed.

Appeal from a judgment of the superior court for King county, Frater, J., entered March 14, 1908, upon the verdict of a jury rendered in favor of the plaintiff, in an action by a stevedore for personal injuries. Affirmed.

*Ira A. Campbell* and *Bogle & Spooner*, for appellant.

*W. E. Southard* and *R. B. Brown*, for respondent.

RUDKIN, C. J.—On the 19th day of October, 1906, the plaintiff and other stevedores in the employ of the defendant were engaged in loading cargo from one of the wharves at the port of the city of Seattle to the deck of the steamer Watson. The plaintiff acted as hatch tender, and gave the signals to the winch driver, directing him when and how to start, run, and stop the winch, as might be necessary in discharging and loading cargo. At the time of receiving the injuries complained of in this action, the plaintiff and his co-employees were loading so-called brick scows from the wharf to the steamer deck. The winch driver, in obedience to signals from the plaintiff, hoisted two of the scows from the wharf and swung them to a position over the deck, between the hatch coamings and the side of the vessel. The plaintiff then directed the winch driver to lower the scows to the deck, but instead, by an improper movement of the levers by which the winch was operated and controlled, the winch driver swung the scows over the hatch coamings and hatchway, knocking the

plaintiff through the hatchway to the bottom of the vessel, thereby causing the injuries for which a recovery is here sought.   The case was tried before a jury, resulting in a verdict in favor of the plaintiff in the sum of $7,500; and from the judgment on this verdict, the defendant has appealed.

The appellant has assigned error in the refusal of the court to grant a nonsuit at the close of the respondent's case, or to direct a judgment in its favor at the close of all the testimony.   These two assignments present the same general question, and may be considered together.   The principal ground of negligence charged in the complaint was the allegation that the appellant employed and retained in its employ an incompetent and inexperienced winch driver.   The appellant contends that the hatch tender and the winch driver were fellow servants; that the only evidence of incompetency or inexperience on the part of the winch driver was the single act of negligence which caused the injury complained of, and that a single act of negligence on the part of a servant is not sufficient evidence of incompetency or unskillfulness to charge the master with knowledge of such incompetency or unskillfulness.

That the hatch tender and winch driver were fellow servants may be conceded, for the purpose of this appeal, and we might also concede that the appellant's further contention is sound, if the single act of negligence which caused the injury were the only evidence of incompetency or unskillfulness on the part of the winch driver.   But we think the testimony of the winch driver himself tends very strongly to show that he was both inexperienced and incompetent.   When the master places a servant in charge of dangerous machinery where special knowledge, skill, or experience is required for its safe and successful operation, he must make reasonable effort to ascertain the qualifications of the servant thus employed, and if he fails to do so he cannot escape liability by showing that there was nothing in the conduct of the servant during the

course of two hours' employment to demonstrate or give notice of his incompetency.

The rule is thus stated by this court in the recent case of *Seewald v. Harding Lumber Co.,* 49 Wash. 665, 96 Pac. 221:

"It was respondent's duty to make reasonable effort to learn the qualifications of the engineer, having regard to the safety of the other men, and it was for the jury to say whether it had learned, or by the exercise of reasonable care might have learned, of that incompetence in time to have removed him and prevented this accident. Speaking of the degree of care required of a master in the selection of servants, the court, in *Wabash Ry. Co. v. McDaniels,* 107 U. S. 454, 460, 2 Sup. Ct. 932, 27 L. Ed. 605, said: 'It is such care as, in view of the consequences that may result from negligence on the part of employees, is fairly commensurate with the perils or dangers likely to be encountered.' "

There is nothing in the record before us to indicate that the appellant made any effort to ascertain the qualifications of the winch driver at the time of or prior to his employment, except an offer to prove that the appellant had a contract with the Longshoremen's Union of Seattle, of which the respondent is a member, under which the appellant agreed to employ members of that Union exclusively; and we are clearly of opinion that the testimony was ample to warrant the jury in finding that the winch driver was incompetent and inexperienced; that such incompetency and inexperience might have been ascertained by the appellant prior to the injury by the exercise of reasonable diligence on its part; that the incompetency and inexperience of the winch driver was the direct and proximate cause of the injury, and that the respondent was not guilty of contributory negligence. The motions for nonsuit, and for a directed verdict were therefore properly denied.

The appellant offered to prove that it had a contract with the Longshoremen's Union, of which the respondent is a member, whereby it agreed to employ members of that Union exclusively; that said Union is an association organized for the

purpose of furnishing experienced men in loading and un-
loading vessels at the port of Seattle; that the Union furnished
the winch driver in question pursuant to a request from the
appellant; and that the appellant relied upon the fact that
the winch driver thus furnished was competent to discharge
the duties assigned him; but an objection to the offer of proof
was sustained. As stated above, there was in our opinion
ample evidence to establish the fact of incompetency on the
part of the winch driver, and in view of the fact that the
safety of other employees of the common master required
that the winch driver should possess special knowledge and
skill, it was incumbent on the master to make reasonable effort
to ascertain his competency and fitness. It is conceded that
the master made no inquiry itself, and that no inquiry was
made by the Union which the master constituted its agent
for that purpose. Admitting, therefore, that the master is
presumed to exercise proper care in the selection of his
servants, that presumption cannot prevail when it affirma-
tively appears that both the master and the agency to which
he intrusts that duty have been negligent and derelict in that
regard. There was, therefore, no error in the ruling com-
plained of.

Error is assigned in the rulings of the court sustaining
objections to the following questions propounded by the ap-
pellant to certain of its witnesses:

"I will ask you, Mr. Maunder, as an expert, whether or
not the fact that one of the winches on the aft deck of the
'Watson' responded to the application of steam quicker than
either a double winch with the lever working up and down, or
a single winch, would in your judgment cause a man operating
the winch to make the mistake of starting the winch ahead
when he should have backed it?

"Q. State whether or not in your judgment, as an ex-
perienced stevedore, familiar with the operation of winches
and the duties and position of hatch tender, a hatch tender
with five years' experience could tell from two hours' operation
of a winch, one of the winches on the aft deck of the 'Wat–

son,' whether or not those winches were being operated in a proper and competent manner by the winchman?

"Q.   I will ask you whether or not, in your judgment as an experienced stevedore, it is proper for a hatch tender to take hold of a swirling load of cargo which is about to be landed on the deck of a vessel, in such a manner as to permit himself to be caught between that load and the hatch coaming when the load is swinging over the hatch hold?

"Q.   I will ask you whether or not, in your judgment, Mr. Rogers, a man who has acted as stevedore on board ships for five years, and during that time has tended hatch, is competent to pass upon the proper or improper operation of the winch on the aft deck of the 'Watson'?"

We do not think that the subject-matter of these inquiries involved any of the mysteries of any particular science, trade, or craft, and the jury was as competent to draw correct inferences in relation thereto as the witnesses to whom the questions were propounded.

"When all relevant facts can be or have been introduced before the jury, and the latter are able to deduce a reasonable inference from them, no reason exists for receiving opinion evidence, and it is inadmissible.    'The governing rule deduced from the cases permitting the opinions of witnesses is that the subject must be one of science or skill or one of which observation and experience have given the opportunity and means of knowledge, which exists in reasons rather than descriptive facts, and therefore cannot be intelligently communicated to others not familiar with the subject so as to possess them with a full understanding of it.'    Ordinary standards of conduct, of safety or danger, comfortable endurance or human ability in a customary connection, the operation of well known natural laws, the application of force in a familiar form, the common characteristics of animals and what is likely to frighten or otherwise injure them, or what, on the other hand, may be approached by them with safety, and methods of doing business which involve no special training, are within this rule.    So also the existence of social customs, inferences drawn from ordinary resemblances, and in general whatever any one may observe for himself and reach a reasonable conclusion with regard to it may be decided by a

jury without the assistance of any experience other than their own.    It does not follow, because a witness is duly qualified and the general subject is a proper one, that his judgment can be asked on any branch of the inquiry.    The precise point of each individual inquiry must be beyond the intelligence of an average jury, and, 'so far partake of the nature of a science as to require a course of previous habit or study in order to an attainment of a knowledge of them.'    The specific decisions under this general rule turn too frequently upon the facts of the particular case to warrant an attempt at exact classification.    If the jury, although presumably devoid at the beginning of a trial of experience concerning a subject-matter, can be so informed during its progress as to reach an accurate conclusion, the subject is not one for an inference, conclusion, or judgment, and the evidence may be excluded in the discretion of the court."    17 Cyc. p. 41 *et seq.*

Within this rule, the court did not abuse its discretion in the rulings complained of.    The ruling of the court in sustaining an objection to the following question is also assigned as error:  "Q.  I will ask you how the lever on the single winch operates?"    We fail to see the materiality of this question, as the winch on the steamer Watson was of a different make and of a more complicated kind.    Exception was also taken to the refusal of the court to give certain instructions requested by the appellant, but the requests so far as proper or material were embodied in the general charge of the court.

The only remaining assignment is the refusal of the court to grant a new trial, because the verdict is excessive.    At the time of receiving the injuries complained of, the respondent was twenty-eight years of age, and had an earning capacity of from $115 to $130 per month during seven months of the year, and of $75 per month during the remaining five months, making an average earning capacity of upwards of $1,200 per year.    His kneecap and elbow joint were fractured and it became necessary to remove portions of the bone from the elbow joint by reason of tubercular infection, so that the respondent has and will have no use of the injured arm.    His

earning capacity in the particular employment in which he was engaged and earned his livelihood, or in the performance of manual labor in any other employment, is practically destroyed; and under such circumstances, we cannot say that a verdict of $7,500 is excessive.

Finding on error in the record, the judgment is affirmed.

FULLERTON, MOUNT, and DUNBAR, JJ., concur.