[No. 7826.   Decided April 3, 1909.]

GEORGE C. LONG, *Respondent*, v. McCABE & HAMILTON,
INCORPORATED, *Appellant*.[1]

MASTER AND SERVANT—FELLOW SERVANTS—DUTY OF MASTER—PRE-
SUMPTION—OCCURRENCE OF NEGLIGENT ACT—BURDEN OF PROOF.  While
it is the duty of the master to make a reasonable effort to ascertain
the competency of a servant, negligence in that respect is not pre-
sumed from the occurrence of an accident through such servant's
neglect, but the burden is on plaintiff to prove (1) the fellow ser-
vant's incompetence; and (2) that the master knew or should have
known thereof.

TRIAL—PROVINCE OF COURT AND JURY—NONSUIT.  While courts
may not determine the weight of the evidence, if there is no evidence
of a fact essential to sustain liability, they must so declare the fact.

MASTER AND SERVANT—FELLOW SERVANTS—MASTER'S KNOWLEDGE
OF INCOMPETENCY—PRESUMPTION—EVIDENCE—SUFFICIENCY—OPINIONS.
The opinion of a single witness that a fellow servant was timid and
therefore incompetent to drive a winch, without proof of a single
prior negligent act, is not sufficient to charge the master with notice
of his incompetency, or overcome the presumption that the master
had performed his duty in employing competent fellow servants.

SAME—NEGLIGENCE OF MASTER IN EMPLOYING SERVANT—EVIDENCE—
SUFFICIENCY—NEGLIGENT ACTS.  The rule that evidence of negligent
acts of a fellow servant from which incompetency might be inferred
makes a *prima facie* case that the master was negligent in employing
him, is not to be extended to a case where his only negligent act
was the act complained of.

TRIAL—PROVINCE OF COURT AND JURY—PRIMA FACIE CASE—SHIFT-
ING BURDEN OF PROOF—QUESTIONS OF LAW.  Where the burden of
proof is shifted from the plaintiff to the defendant by a *prima facie*
case sufficient to overcome a presumption in favor of the defendant,
and is then shifted back to the plaintiff by defendant's counter evi-
dence, plaintiff's *prima facie* case must, on demurrer to the evidence,
be measured by defendant's evidence, and determined as a matter of
law in the light of defendant's explanations.

MASTER AND SERVANT—FELLOW SERVANTS—NEGLIGENCE OF MAS-
TER—SHIFTING BURDEN OF PROOF—EXPLANATIONS OF DEFENDANT—EVI-
DENCE—SUFFICIENCY.  Negative evidence of the incompetence of a
fellow servant to run a winch, consisting of the opinion of a single
witness that he was incompetent, the fact that witnesses had never

[1]Reported in 100 Pac. 1016.

seen him run a winch, the fact that he asked instructions how to run it, and the fact of the negligent act complained of, if sufficient to cast the burden of proof upon the master to show the exercise of due care in employing him, is destroyed and overcome, as a matter of law, by defendant's positive evidence that the servant had driven winches off and on for twenty years, that he had driven winches on specified vessels, and for several hours on one vessel with the plaintiff, and that he had a good reputation and was qualified as a winch driver, and that the act complained of was done according to a fixed custom to carry an empty sling out over the deck without stopping for a second signal; and the burden having again shifted and so still being upon the plaintiff to establish his case, a nonsuit is properly granted; since negative evidence must give way to positive evidence, and what amounts to a *prima facie* case may not be so when rebutted.

FULLERTON, J., dissents.

Appeal from a judgment of the superior court for King county, Tallman, J., entered June 9, 1908, upon the verdict of a jury rendered in favor of the plaintiff, for personal injuries sustained by a stevedore in loading a ship. Reversed.

*R. S. Eskridge* and *Hughes, McMicken, Dovell & Ramsey,* for appellant, contended, among other things, that proof that a fellow servant was negligent in one instance does not tend to prove his incompetency. *Tucker v. Missouri etc. Tel. Co.* (Mo.), 112 S. W. 6; *Baltimore Elevator Co. v. Neal,* 65 Md. 438, 5 Atl. 338; *Buckley v. Gould etc. Min. Co.,* 14 Fed. 833; *Sullivan v. New York etc. R. Co.,* 62 Conn. 209, 25 Atl. 711; *Baulec v. New York etc. Co.,* 62 Barb. 623; *Id.* 59 N. Y. 356; *Rush v. Murphy Co.,* 135 Iowa 376, 112 N. W. 814; *Wicklund v. Saylor Coal Co.,* 119 Iowa 335, 93 N. W. 305; 26 Cyc. p. 1297, note 91; *Cooper v. Milwaukee etc. R. Co.,* 23 Wis. 668; *Hathaway v. Illinois Cent. R. Co.,* 92 Iowa 337, 60 N. W. 651. Negligence cannot be imputed from the employment of an otherwise competent servant merely because he lacks experience; nor is inexperience conclusive of incompetency. *Gorman v. Minneapolis etc. R. Co.,* 78 Iowa 509, 43 N. W. 303; *National Fertilizer Co. v. Travis,* 102 Tenn. 16, 49 S. W. 832; *Kellogg v. Stephens*

*Lumber Co.*, 125 Mich. 222, 84 N. W. 136; *Ohio etc. R. Co. v. Dunn*, 138 Ind. 18, 36 N. E. 702, 37 N. E. 546; *Haskin v. New York Cent. etc. R. Co.*, 65 Barb. 129. The burden was on the respondent to overcome the presumption that Tommie Moore was competent. *M'Charles v. Horn Silver Min. etc. Co.*, 10 Utah 470, 37 Pac. 733; *Roblin v. Kansas City etc. R. Co.*, 119 Mo. 476, 24 S. W. 1011; *Davis v. Detroit etc. R. Co.*, 20 Mich. 105, 4 Am. Rep. 364; *Wright v. New York Cent. R. Co.*, 25 N. Y. 562; Wood, Master and Servant (2d ed.), § 419.

*Blaine, Tucker & Hyland* and *Robert C. Saunders*, for respondent, contended that the master was guilty of negligence in employing a servant known to him to be incompetent. *Seewald v. Harding Lumber Co.*, 49 Wash. 655, 96 Pac. 221; *Conover v. Neher-Ross Co.*, 38 Wash. 172, 80 Pac. 281, 107 Am. St. 841; *Green v. Western American Co.*, 30 Wash. 87, 70 Pac. 310; *Smith v. Michigan Lumber Co.*, 43 Wash. 402, 86 Pac. 652; *Melse v. Alaska Commercial Co.*, 42 Wash. 356, 84 Pac. 1127. The questions of incompetency of the servant and contributory negligence of the plaintiff were for the jury and should not, upon a disputed state of facts, be disturbed by this court. *Bunnell v. St. Paul etc. R. Co.*, 29 Minn. 305, 13 N. W. 129; *Crandall v. McIlrath*, 24 Minn. 127; *Lee v. Michigan Cent. R. Co.*, 87 Mich. 574, 49 N. W. 909; *Western Stone Co. v. Whalen*, 151 Ill. 472, 38 N. E. 241, 42 Am. St. 244; *Evansville etc. R. Co. v. Guyton*, 115 Ind. 450, 17 N. E. 101, 7 Am. St. 458; *Keith v. New Haven etc. R. Co.*, 140 Mass. 175, 3 N. E. 28; *New York etc. S. S. Co. v. Anderson*, 50 Fed. 462.

CHADWICK, J.—Plaintiff brought this action against defendant to recover damages sustained by reason of a fall from the deck of the steamship Nebraskan, which was at the time of the accident engaged in loading railroad draw-bars at a dock in the city of Seattle. Defendant is an incorporated company, engaged in stevedoring, and employs

through its foreman crews or gangs of men to load and unload ships. At the time plaintiff was injured, one Tommie Moore was engaged by defendant as yardarm winchman, one Harris as midship winchman, and plaintiff as hatch tender.

The method of loading was as follows: A bullion sling, made of heavy rope closely woven and weighing about one hundred and twenty-five pounds, was laid on the dock. In this was placed about a ton weight of the irons. The load was then hoisted by the yardarm winchman, and brought clear of the ship and over the hatch, when he reversed his winch, letting out his fall line, the load being taken by the midship winchman and lowered into the hold. When dumped, the empty sling was raised by the midship winchman, carried clear of the hatch coamings, where the load of the sling was shifted to the yardarm winch and was carried by the yardarm winchman across the deck, the midship winchman in turn reversing his winch so as to let out the slack of his fall line. The load was lifted and carried from the deck clear of the ship and over the hatch upon a signal from the hatch tender, and lowered by the midship winchman upon a like signal. In taking out the empty sling, the midship winchman acted upon signal, but whether it was to be taken on out by the yardarm winchman as soon as it was clear of the hatch coamings, or to be held awaiting a signal before it was carried across the deck, was the principal ground of dispute in the court below.

It was the duty of the hatch tender to see that all was clear in the hold of the ship as well as upon the dock. This made it necessary for him to follow the load and watch it until it was dumped in the hold of the ship, and in turn, after seeing that all was clear below, walk from the hatch to the side of the vessel to see that the loaders were ready for the empty sling, and that no one was in the way when he signaled the yardarm winchman to drop it.

After three loads had been carried in, plaintiff ordered

the sling brought out of the hold, and then turned and walked toward the side of the ship. He says he had taken two or three steps. Tommie Moore, upon whose alleged negligence plaintiff's right of recovery is predicated, says he was standing at the side of the vessel with one foot on the foot rail looking down on the dock when he was struck by the sling, carried over the side of the ship, and received the injuries of which he now complains. Defendant moved for judgment at the close of plaintiff's case, for judgment at the close of the testimony, for judgment notwithstanding the verdict, and for a new trial, all of which motions were denied. From a judgment in favor of plaintiff, defendant has appealed, and has assigned the several rulings of the court, as well as the entry of judgment, as error for review by this court.

It will be seen that respondent seeks to hold appellant liable for a breach of its duty to employ a competent fellow servant. This court has laid down the rule that it is the duty of the master to make a reasonable effort to ascertain the qualifications of a servant employed to work with others. *Pearson v. Alaska Pacific Steamship Co.*, 51 Wash. 560, 99 Pac. 753; *Seewald v. Harding Lumber Co.*, 49 Wash. 655, 96 Pac. 221; *Green v. Western American Co.*, 30 Wash. 87, 70 Pac. 310; *Melse v. Alaska Commercial Co.*, 42 Wash. 356, 84 Pac. 1127; *Smith v. Michigan Lumber Co.*, 43 Wash. 402, 86 Pac. 652.

Negligence of the master in the performance of this duty will not be presumed from the mere occurrence of an accident, the result of a negligent act. It is a fact to be proved by plaintiff. He must show by a preponderance of the evidence two things: that the servant was incompetent, and that the master knew, or should have known, of his incompetency in the light of all the evidence. 26 Cyc. 1296-1299.

Courts should not undertake to determine the weight of evidence; but if in the discharge of their duty it appears that there is no evidence within the rules aforementioned, they should meet the responsibility put upon them and so

declare the fact. In the instant case, the testimony relied upon to prove the incompetency of Tommie Moore, the yard-arm winchman, was of a negative character. It consisted, when reduced to the fewest words, of the testimony of several witnesses that they had never seen him drive a winch, of one who said that he had never seen him drive a winch before. One of the witnesses went further and testified that he was reputed among longshoremen to be a wheat packer. Another witness said that Tommie Moore had told him that he had never run a winch, and another that he had asked him how to run the winch just before the work of loading had started on the occasion of the accident. All of these things may have been true, and yet appellant would not be liable. The testimony relied upon to prove knowledge on the part of the appellant consists of the statements of Madison Fredenberg, who was at the time of the accident hatch foreman and had under his immediate charge all of the men engaged in the work of loading the ship, from the loaders on the dock to the packers in the hold. Fredenberg worked under the direction of one Billy Moore, who was the walking boss and the immediate representative of appellant. His testimony on this point follows:

"Int. 9. Did you ever know a man by the name of Tommie Moore? A. Yes, sir. Int. 10. If you answer the foregoing interrogatory in the affirmative state when you knew him, whether you knew him on or about December 21, 1906, and how long you had known him before that time. A. Knew him December 21, 1906, and for about six months prior to that time. Int. 11. State if you know what his business or occupation was. A. He was a wheat packer. Int. 12. Do you know whether or not Tommie Moore was present on the steamship Nebraskan on the 21st of December, 1906, at the time that the plaintiff George C. Long was injured? A. Yes, sir; he was. Int. 13. State what Tommie Moore was doing at that time. A. He was driving a winch. Int. 14. How long before that time had Tommie Moore been driving a winch, to the best of your knowledge? A. About two weeks, to the best of my knowledge. Int. 15. Who set Tommie Moore to

driving the winch on that day? A. Myself. Int. 16. State if you know what kind of a winch driver Tommie Moore was. A. He was not a competent man; but being a wheat packer, I had to place him there, through instructions from Billy Moore. Int. 17. Did you have any conversation with Billy Moore on the 21st of December, 1906, relative to having Tommie Moore run the winch? A. I did. I spoke to Billy Moore and told him I did not consider Tommie Moore competent to run the big winch. He said leave him there till some one came to run the engine, and then put him in the hold. Int. 18. If you answer the foregoing interrogatory in the affirmative, state fully what the conversation was between you and Billy Moore at that time and when it took place, whether before or after the plaintiff Long was hurt. A. As I said before, I told Billy Moore Tommie was not competent to run the winch. That was before George C. Long was hurt. Int. 19. State whether or not you were working on the steamship Nebraskan on the 21st of December, 1906. A. I was. Int. 20. If you answer that you were, state in what capacity you were working. A. In the capacity of hatch foreman. Int. 21. If you state in answer to any of the foregoing interrogatories that Tommie Moore was not a good, skilled or experienced winch driver, state why you formed that opinion and what opportunity you had to observe his skill as a winch driver, and how many times during your acquaintance you had known him to run a winch. A. I had known Tommie Moore to drive a winch twice. The first time that he drove a winch he drove it for me. He was afraid then he could not run the winch and I showed him how. That is the reason that I formed the opinion that he would never make a winch driver—he was too timid."

"Cross-Int. 3. If you answer "yes" to interrogatory 15, state how you know who set Tommie Moore to work driving a winch. A. My instructions from Billy Moore were to place all wheat packers to work in preference to any other longshoremen. As Tommie Moore had driven winch for me once before and there were no other drivers around I put him on the job."

Admitting, for the sake of argument, that Tommie Moore was negligent, it does not follow that he was incompetent so as to charge his employers with knowledge of that fact.

There is a division of authority on the proposition that opinion evidence is admissible to prove incompetency of a servant. But in a review of the authorities, we do not find any sustaining the doctrine that the mere opinion of a single individual is enough to charge an employer with knowledge of the incompetency of a servant. It cannot be laid down as a matter of law that a competent man is never negligent. Then, if this be so, the opinion of one man who testifies that the servant was timid, but to not one single negligent act or physical fact, as for instance age, habits, bodily or mental qualities, should not be held to conclude the employer or overcome the presumption that the master has done his duty. Unless such knowledge is proven, there can be no recovery. No specific acts or series of acts of negligence were shown, as in the case of *Conover v. Neher-Ross Co.*, 38 Wash. 172, 80 Pac. 281, 107 Am. St. 841, from which the jury would have been warranted in finding that Tommie Moore was incompetent. Plaintiff's case rested entirely, as we have said, upon the negative testimony that he had never driven a winch to the knowledge of plaintiff's witnesses, and the testimony of Fredenberg that he was timid and therefore incompetent, and the testimony of Harris that he had asked him how to run a winch just before the accident.

Respondent relies upon the case of *Seewald v. Harding Lumber Co., supra*, to sustain his case. While the *Seewald* case goes to the extreme limit in fixing the liability of the master, and the conclusion of the court was no doubt correct, we do not think it should be extended in its application beyond the holding there made that, where acts from which incompetency may be inferred are proven, the burden of showing that it had performed its duty to exercise proper care in the selection of its servants shifted to the master. The true rule in such cases is laid down by Bailey, in Master's Liabilities for Injury to Servants, p. 55, and quoted with approval in *Green v. Western American Co., supra*, as follows:

"The presumption is that the master has exercised proper care in the selection of the servant. It is incumbent upon the party charging negligence in this respect to show it by proper evidence. This may be done by showing specific acts of incompetency, and bring them home to the knowledge of the master or company; or by showing them to be of such a nature, character and frequency that the master, in the exercise of due care, must have had them brought to his notice. But such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of. So it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of a servant, to leave it to the jury to determine whether they did come to the knowledge of the master, or would have come to his knowledge if he had exercised ordinary care. In such case the presumption that the master had discharged his duty may be overcome to such an extent as to call upon him to rebut the proof made showing his negligence."

Assuming, then, that the testimony was sufficient to cast this burden on appellant, the testimony adduced and offered at the trial shows that it amply sustained the charge put upon it by the trial court. Where the burden shifts, the *prima facie* showing which a plaintiff is bound to make must be measured by the evidence of the defendant rather than by any fixed rule of law.

"When the party who has the affirmative of an issue has succeeded in making out a *prima facie* case he has relieved himself for the time being of the necessity of producing evidence; for, unless the adverse party now goes forward with evidence, this *prima facie* case naturally results in an established case upon all the evidence. In other words, this duty of introducing evidence is shifted by a *prima facie* case in the first instance, and back again by counter evidence which meets and destroys the *prima facie* case, and so on. And this is what the authorities mean when they say that the burden of proof shifts during the progress of a trial." 5 Ency. Plead. & Prac., p. 39.

In other words, as against a motion for a judgment at the close of plaintiff's case and renewed at the close of all the

evidence, a *prima facie* showing is to be determined as a matter of law by the court in the light of the explanations made by the defendant. The duty of measuring the evidence, not as to its weight but its legal effect, is put upon the court. What may have been evidence *prima facie*, may not be so when rebutted by other evidence. The negative testimony must give way to the positive evidence. The testimony to overcome the case made by appellant shows that Tommie Moore had driven winch off and on for over twenty years; that he had been engaged at steamboating and stevedoring since 1887; that he was a man over forty years of age; that he had found employment as a winchman on the following vessels: The Nebraskan, the Quito, the Tremont, the Shawmut, the Princess Louise, the Kumeric, the American Whale, and other vessels the names of which the witnesses could not remember; that he had driven winch for several hours on a vessel with plaintiff; that he had a good reputation as a winchman. One witness who qualified as a winchman of experience, and who was permitted to testify by the court, said that he had seen him engaged in driving winch and that he was a competent winch driver. It was further shown by a number of stevedores who had had years of experience in tending hatch that it was a fixed custom among winchmen to carry an empty sling out of a hold and right on out over the deck without stopping for another signal, when clear of the hatch, and that although the sling had been stopped twice in succession, it was still the duty of the winch tender under such custom to carry the sling right on out. This testimony is entitled to added weight from the fact that plaintiff undertook to show that the custom was otherwise, and finds further support in the fact that at the particular time Harris, the midship winchman, reversed his winch and laid out his fall line without signal from the plaintiff. Therefore, if we should admit that the theory of the lower court that a *prima facie* case, showing the incompetency of Tommie Moore and knowledge of such incompetency on the part of

the master, was made out and that appellant should for that reason go on with its case, yet nevertheless the burden of sustaining his case by a preponderance of the evidence being still on respondent, we conclude, in the light of all the evidence, that there was no testimony tending to show that Tommie Moore was incompetent, or if so, that appellant was in any degree remiss in its duty to make reasonable effort to ascertain the qualifications of a servant engaged to work in fellowship with others. This conclusion makes it unnecessary for us to discuss questions of contributory negligence and assumed risk argued by appellant in its brief, as well as errors in the rejection of testimony which would in any event compel a reversal of this case.

The judgment of the lower court is reversed, with directions to enter judgment in favor of appellant.

RUDKIN, C. J., GOSE, MOUNT, and CROW, JJ., concur.

FULLERTON, J. (dissenting)—I am unable to concur in the foregoing opinion. Manifestly there was a conflict in the evidence both as to the competency of the winchman Moore, and as to the knowledge the master had of his incompetency. The question, therefore, was for the jury, and this court usurps its functions when it sets aside the jury's findings thereon. The judgment should be affirmed.

DUNBAR, MORRIS, and PARKER, JJ., took no part.