[No. 10642.   Department Two.   November 20, 1912.]

E. L. EMERY, *Respondent,* v. THE CITY OF TACOMA, *Appellant.*[1]

MASTER AND SERVANT — FELLOW SERVANTS — INCOMPETENCY—EVI-DENCE—SUFFICIENCY. There is sufficient evidence of the incompe-tence of a man employed as a nozzleman with a hydraulic giant, working under a high pressure, where it appears that he had worked for thirty days with a short straight nozzle, which took no particular skill, that the employee was excitable, and upon putting on a de-flector, which made the work dangerous and required an experienced and cool man to control it, he objected to using the deflector as a "newfangled arrangement" and too complicated; any evidence of in-experience being proof of incompetence where experience was nec-essary

SAME—EMPLOYMENT OF INCOMPETENT FELLOW SERVANT—EVIDENCE OF NEGLIGENCE—SUFFICIENCY. Reasonable care in the employment of a nozzleman for a hydraulic giant equipped with a deflector, which would be dangerous if intrusted to an inexperienced man, is not shown by the fact that upon engaging him, he was asked if he had experience as a nozzleman and replied in the affirmative, where the nozzle then in use was a straight nozzle, which was simple and re-quired no skill to control it, and he was not asked if he had had ex-perience with a deflector.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered March 30, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee of a city on a street fill.   Affirmed.

*T. L. Stiles* and *Frank M. Carnahan,* for appellant.

*Gordon, Easterday & Askren,* for respondent.

¹Reported in 127 Pac. 851.

ELLIS, J.—This is an appeal by the defendant city of Tacoma from a judgment against it in favor of the plaintiff, for damages by reason of personal injuries suffered by him through alleged negligence of the city in employing an incompetent fellow servant. The sole question presented for our consideration is as to the sufficiency of the evidence to sustain the verdict and judgment.

The facts as established by the evidence were as follows: On June 5, 1911, the date of the accident, and for several months prior thereto, the city of Tacoma was and had been engaged in making a fill in Tacoma avenue at what is known as the Tacoma avenue bridge. The dirt was secured from an adjacent bank by sluicing, and was carried to the fill in sluice boxes. The sluicing was done by forcing water through a pipe connected with a hydraulic giant. Prior to the day of the accident, the giant had been equipped with a short straight nozzle, three or four inches long. About thirty days prior to the accident, one Andrew Shire applied for employment to the commissioner of public works, who had charge of the employment of men for this work. Claiming to be an experienced nozzleman, he was, without further investigation, sent to the head foreman on the work and immediately employed as nozzleman, so continuing until the accident. During all of that time, however, he used the straight, short nozzle which required no particular skill or experience to operate safely. The men engaged on the work were divided into two shifts, one working in the forenoon, the other from noon till night. Each shift had a foreman, that of the forenoon shift being head foreman. There was also an engineer in charge of the work, and both foremen were under his direction and control. Shire was nozzleman for the afternoon shift. At some time in the forenoon of the day in question, the head foreman removed the short straight nozzle from the giant and put on a deflecting nozzle. The best description of this nozzle found in evidence is that of the nozzleman of the forenoon shift. He said:

"The giant in the first place is straight, runs on a ball-bearing and swings around by hand. This deflector has a ball joint fastened to the end of the giant, and when the water strikes the deflector it plays back and forth, and there is a lever on the deflector and when you move the deflector, that means to glance,—when it strikes the ball it turns the giant, and when the water strikes direct, straight into the deflector, it goes straight through and there is no pressure, and when you pull it off the center, it strikes the side of the ball-bearing and that turns it, and it sets on a set screw, so that it is perfectly loose, and the water turns it back and forth. If you pull the lever to you it throws the point of the deflector away from you, and the water strikes her and that turns it towards you. You don't have to pull it at all; it moves itself. At that time there was 145 pounds pressure, and if you pull it off the center no man living can hold it."

The evidence amply shows that this would be a very dangerous instrumentality to intrust to the management of an inexperienced man. The foreman testified that Shire objected to the change in nozzles, called the deflector a "newfangled arrangement," and said he did not want to work with it. That afternoon Shire was a few minutes late for work, and when he arrived the man who was operating the nozzle attempted to explain to him how to use it. Shire impatiently informed him that he knew all about it, told him to get out of the way, and took charge of it. At the time there were six or eight men at work in the pit shoveling the displaced dirt into the sluice boxes. Within a few minutes afterwards, a man named Alexon was knocked down by the stream, but under what circumstances does not fully appear. Within a very few minutes afterwards, Shire completely lost control of the nozzle, and it swung round so that the stream struck the respondent and two other men who were working by his side shoveling dirt into the flume, knocking them down and inflicting upon the respondent the injuries complained of.

The appellant contends that there was not sufficient evidence that Shire was incompetent, but on the contrary, the

fact that he had acted in the capacity of nozzleman for at least thirty days without accident or complaint proved his competence.   There could be no question of the correctness of this position had there been no change in the nozzle.   The evidence, however, makes it perfectly plain that a much greater degree of care, prudence, and experience is required for the operation of a deflecting nozzle with safety than that required for a straight one.   The evidence was all one way, that the operation of a deflecting nozzle by a man of no previous experience with that kind of nozzle would be extremely dangerous to his fellow workmen.   This was graphically expressed by the nozzleman of the forenoon shift, himself an experienced man.   When asked what danger to others would result from the operation of a deflector by an inexperienced man, he said:

"There is as much danger as to get up on a locomotive and pull the throttle open and letting her go; a man wouldn't know what she would do; he did not know what to do to stop it, and if you were around there the water would hit you, because she would be in motion for a month, as long as the lever was off the center there was no way to stop it except to push it back on the center."

With such an instrumentality, it is obvious that any evidence of inexperience would be evidence of incompetency of the operator.   The evidence was uncontradicted that Shire objected to the deflector as a "newfangled arrangement," and "objected to putting on of any additional inventions," said that he did not want to work with it, and seemed to consider it too complicated.   From this evidence, the jury might easily conclude that the device was entirely new to him, and that he was wholly lacking in an essential element of competency, namely, experience with such an instrumentality. As opposed to this there was absolutely no evidence that he had ever used a deflector, further than his impatient remark to the man in charge when he came late to his work that afternoon.   Moreover, there was evidence that, even with an ex-

perienced man, it required a cool head to operate a deflector
with safety under high pressure, and that Shire was of an
excitable disposition. However competent Shire may have
been to operate a simple, straight nozzle, the jury was war-
ranted by the evidence in finding him incompetent to operate
the more complicated and dangerous deflecting nozzle.

But it is urged that, even conceding Shire's incompetence,
there was no evidence of negligence on the appellant's part
in employing him. This presents the question of reasonable
care which is always a relative question determinable upon
the exigencies of the particular service and the danger to
be avoided. *Wabash R. Co. v. McDaniels*, 107 U. S. 454-
460; 26 Cyc. 1295, 1296; 1 Labatt, Master and Servant,
§ 194. The head foreman, the engineer in charge, the fore-
man of the afternoon shift, and the nozzleman of the fore-
noon shift, all concurred in the statement that the use of the
deflector would be dangerous if intrusted to an inexperienced
man. The exigencies of the service certainly required a
greater degree of care in the selection of an operator for
the deflector than for the ordinary, straight nozzle. We are
not impressed by the contention that the appellant had done
its whole duty in this regard when its commissioner of public
works asked Shire if he had had experience as a nozzleman
and was content with an affirmative answer. The nozzle then
in use was a straight nozzle, and there is no evidence that
the use of a deflector was then contemplated; certainly it
was not mentioned. The record is devoid of a single word
of evidence that, either then or thereafter, any inquiry was
made, either from Shire himself or from any other source, as
to whether he had ever used a deflector. However long he
may have handled the straight nozzle with safety, that was
no evidence that he could operate the deflector. The very
change of instrumentality should have suggested additional
inquiry and care. While the evidence shows that an intelli-
gent and careful man could learn to operate a deflector in
half an hour or less, this, so far from excusing inquiry, em-

phasizes the ease with which Shire's competency or lack of
competency could have been demonstrated. A short try-out
without men in the pit would have settled the matter.

The appellant contends that a master has the right to
assume that a servant will not undertake work which he has
not sufficient skill to perform, in the absence of conduct in-
dicating general carelessness. One case (*Hilton v. Fitchburg
R. Co.*, 73 N. H. 116, 59 Atl. 625, 68 L. R. A. 428), so hold-
ing, is cited. While in that case a correct result was prob-
ably reached upon the facts, we cannot, in view of our own
decisions and what we conceive to be the decided weight of
authority, adopt that statement as a correct pronouncement
of a general rule of law. It would relieve the master of any
positive duty to make reasonable inquiry as to the compe-
tency of the servant, however dangerous to co-laborers the
employment might be and however easy the ascertainment
of the truth. It would substitute unreasonable complaisance
for reasonable care. It would ignore the exigencies of the
service. The following rule announced by the late Justice
Harland in *Wabash R. Co. v. McDaniels, supra,* seems to
us more consonant with the dictates of reason and humanity.

"But according to the best-considered adjudications, and
upon the clearest grounds of necessity and good faith, ordi-
nary care, in the selection and retention of servants and
agents, implies that degree of diligence and precaution which
the exigencies of the particular service reasonably require.
It is such care as, in view of the consequences that may re-
sult from negligence on the part of employes, is fairly com-
mensurate with the perils or dangers likely to be encoun-
tered."

The nozzleman had been employed with the deflector noz-
zle but fifteen or twenty minutes prior to the accident. He
had expressed a reluctance to use it, his language to the fore-
man indicating that it was new to him. Ordinary prudence
would have suggested inquiry as to his knowledge and ex-
perience with so dangerous an agency. Reasonable care
would have demonstrated his unfitness.

"When the master places a servant in charge of dangerous machinery where special knowledge, skill, or experience is required for its safe and successful operation, he must make reasonable effort to ascertain the qualifications of the servant thus employed, and if he fails to do so he cannot escape liability by showing that there was nothing in the conduct of the servant during the course of two hours' employment to demonstrate or give notice of his incompetency." *Pearson v. Alaska Pacific Steamship Co.,* 51 Wash. 560, 99 Pac. 753, 130 Am. St. 1117.

"Actual knowledge on the part of the master of the incompetency of a servant through whose acts another servant sustained injury is not indispensable to the injured servant's right of recovery. The master cannot screen himself from liability upon the ground that he did not know of the incompetency of the servant whose negligence caused the injury, if he might have known it by the exercise of reasonable care and caution." 26 Cyc. 1299.

See, also, *Seewald v. Harding Lum. Co.,* 49 Wash. 655, 96 Pac. 221; *Pope Glucose Co. v. Byrne,* 60 Ill. App. 17; *Scott v. Iowa Tel. Co.,* 126 Iowa 524, 102 N. W. 432; *Gilman v. Eastern R. Co.,* 13 Allen 433, 90 Am. Dec. 210. The question presented was, under the evidence, one for the jury. 1 Labatt, Master and Servant, § 186.

The judgment is affirmed.

MOUNT, C. J., FULLERTON, MORRIS, and MAIN, JJ., concur.