[No. 11184.  Department Two.  August 11, 1913.]

## CHARLES OSTROSKI, *Respondent*, v. BLUMAUER LOGGING COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—INCOMPETENT FELLOW SERVANT—NEGLIGENCE OF MASTER—QUESTION FOR JURY.  Negligence in employing an incompetent engineer to run a donkey engine in a logging camp is a question for the jury, where it appears that the fireman, a Japanese boy, was allowed to temporarily run the engine during the absence of the engineer, that he was inexperienced, excitable and reckless, and that complaint had been made of him as incompetent, two or three days before the accident.

SAME—CAUSE OF INJURY—EVIDENCE—QUESTION FOR JURY.  The negligence of an inexperienced engineer in starting a donkey engine "faster than usual" when signalled to pull on a log that was obstructed, is a question for the jury, where there was evidence that an experienced man would. have started the engine slowly to avoid injury through swinging of the log, which occurred at the time in question.

SAME—DUTY TO WARN—NECESSITY—EVIDENCE—SUFFICIENCY.  It cannot be said, as a matter of law, that a warning was given, or that

[1]Reported in 134 Pac. 521.

it was unnecessary, where a man, without practical experience as a logger, working as a signalman in the woods near a cable for about two weeks, was injured while giving a signal and standing in the bight of the cable, there was evidence that he was not warned of the danger, and was instructed by the foreman to give the signal at any point without crossing the road, and the foreman himself sometimes gave the signal from the same position. .

SAME—ASSUMPTION OF RISKS—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY. A signalman, without experience as a logger, is not guilty of contributory negligence, and does not, as a matter of law, assume the risk of injury from the swinging of a log, while he was giving a signal from a stump on the bank six feet above the log in the ravine below, especially where he was following the general instructions of the foreman to give the signals from the nearest point.

Appeal from a judgment of the superior court for Thurston county, Sheeks, J., entered November 2, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries. Affirmed.

*Murphy & Wall* and *Peters & Powell*, for appellant.

*Teats, Metzler & Teats, Bigelow & Manier*, and *Ben S. Sawyer*, for respondent.

ELLIS, J.—This is an action to recover damages for personal injuries, sustained by the plaintiff while employed in the defendant's logging camp. Plaintiff is of foreign birth, and testified largely through an interpreter. Defendant's operations consisted in the falling of trees, cutting them into log lengths, and in hauling them from the woods to a point where they were loaded on cars for transportation on a logging road. The log, where felled, was beveled at one end, and around it was placed a short piece of wire rope, called a "choker," which was hooked to a main cable. By means of a "donkey" engine, the log was then pulled to a place nearer the loading station called the "yard," where the choker was detached from the yard engine cable, and fastened to the steel wire cable which led to the donkey located just beyond the loading station. From the yard to the loading station,

the logs were dragged along a dirt road, five or six feet wide, which, at a point approximately 400 feet from the loading station, passed through a narrow canyon with steep sides about six feet high.   Here the road made a rather sharp curve to the left; and on the left side of the road, looking towards the station engine, was a post upon which was a spool or wheel over which the cable ran to keep it free from the rocks.   Plaintiff was stationed at this point, his duties being to see that the cable ran on the spool, that the road was kept clear of obstructions, and to readjust the choker or take other steps necessary to free the logs when they became snubbed against the bank or otherwise obstructed at this point.   A main signal wire ran from the station donkey to the yard, passing at a height of from five to eight feet over the place where plaintiff was working.   A branch signal was attached to the main wire and ran across the road and beyond a point opposite the pulley post.   By the use of this branch wire, it would not be necessary in signaling to get in the curve or bight of the cable.

In the afternoon of February 17, 1912, a log in its progress from the yard to the loading station became jammed against a windfall on the opposite side of the road from the pulley post.   The choker was attached to this log near the middle, instead of near the front end as was proper.   Plaintiff readjusted the choker so as to bring the hook to the left side of the log in the hope that it would thus be pulled away from the obstruction.   He then mounted a stump on the left side of the road about six or seven feet from the log, and opposite a point near its front end, and pulled the main signal wire.   The engine was started quickly, and the log suddenly swung, striking the plaintiff and inflicting the injuries of which he complains.   The evidence also tended to show that the work was dangerous for an inexperienced man. The trial resulted in a verdict in favor of the plaintiff.   At appropriate times, the defendant moved for a nonsuit, to withdraw the whole case from the jury, to withdraw the ques-

tion of the engineer's incompetency, for judgment notwithstanding the verdict, and for a new trial, all of which motions were denied.   Judgment was entered on the verdict, and the defendant has appealed.

The appellant contends that the court should have taken the case from the jury and rendered judgment for the appellant for two reasons:   (1) That there was no evidence of negligence on the appellant's part; (2) that the danger was obvious, that respondent assumed the risk, and was himself negligent.

I.   The negligence charged in the complaint was, first, that the appellant negligently employed an incompetent engineer to run the donkey engine; second, that it failed to give the respondent such instructions as to his work and such warning of its dangers as his inexperience and lack of knowledge demanded.

It is elementary that, upon motion to take a case from the jury, the evidence with all of its justifiable inferences must be considered most strongly in favor of the party opposing the motion.   At the time of the accident, the donkey engine was being operated by the fireman, a Japanese boy, the engineer being ill.   Though the Japanese boy had been employed by the appellant as fireman for about three years, the evidence showed that his actual knowledge as to the operation of the donkey was such as he had acquired by observing the work as fireman, and, as testified by one witness, by being permitted at different times for short intervals when the engineer was busy at something else to "make a pull."   While the foreman in charge of the work testified rather indefinitely that this fireman had at different times run the donkey "maybe two or three days, a week, or maybe two or three weeks at a time," no one else testified to his operating it except by occasional permission of the engineer prior to the time of the accident and two or three days before.   On the whole, the appellant's evidence showed that his actual experience was meager.   His qualification was, we think, accu-

rately summed up by one of the appellant's witnesses, himself an engineer, who said:

"Well, I couldn't say that he appeared as an experienced engineer at all, but he appeared to handle it fairly well. Of course, he would make a mistake sometimes and maybe get hold of the wrong lever, as any man who was not experienced with it would do, but as an amateur he was as good as any of them."

Where safety or even life may depend upon the handling of an engine, something more than amateur proficiency and experience should be found in the engineer. The respondent introduced evidence to the effect that the Japanese in running the engine was "excitable," that sometimes when signals were frequent he would get "rattled," and that he was "reckless." One witness testified that, two or three days before the accident, while the witness was working in the bight of the cable, the Japanese handled the donkey so recklessly that the witness complained to the foreman. If he was incompetent, the appellant was affected with notice of that fact, both by its knowledge of his inexperience and by this complaint. Under the evidence, both the question of his incompetence and appellant's negligence in placing him in charge of the engine were matters for the jury. *Seewald v. Harding Lumber Co.*, 49 Wash. 655, 96 Pac. 221; *Pearson v. Alaska Pacific Steamship Co.*, 51 Wash. 560, 99 Pac. 753, 130 Am. St. 1117; *Emery v. Tacoma*, 71 Wash. 132, 127 Pac. 851.

The appellant also contends that there was no evidence that any improper handling of the engine contributed to the injury. The testimony of the regular engineer, a man of experience, was to the effect that an experienced engineer is largely guided, not only by the signals, but also by the action of his engine, and will regulate its speed according to the resistance; and an experienced engineer on receiving a signal would at first go slowly in order to avoid injury to the man at the log before he could get out of the way; that if the engine was started quickly, an obstructed log if choked in the

middle would invariably swing around. Other evidence tended to show that, if a log was obstructed, it was likely to swing, and that if the choker was near the middle it would be more apt to do so, a fact of which the respondent professed ignorance. The evidence showed that the log here in question was, at least when it reached the place of the accident and became obstructed, choked some distance from the end and that the injury was caused by its swinging. There was also evidence that the Japanese started the engine "faster than usual." Though much of this was controverted by appellant's evidence, the conflict made the question one for the jury. It was for the jury to say whether the engine was started in an unusual manner and whether that fact contributed to the injury by causing the log to swing suddenly while the respondent was in a place of danger.

Passing to the second claim of negligence, namely, failure to properly instruct and failure to warn, we find that the respondent was under the immediate direction of a skid boss, but also under the general control and supervision of the foreman or woods boss; that he had worked in the logging camp for about four months, but only two weeks of this time at the place where he was injured. He had had no other experience as a logger. He could not understand the English language and had to be instructed by demonstration. He testified that the skid boss first showed him how to make signals and how to place the cable on the pulley and adjust the choker on the logs, and instructed him to give the signals by means of the branch signal wire on the right-hand side of the road and extending a sufficient distance therefrom to enable the signals to be given without danger; that he did as he was directed for a few days, and until the foreman, observing that the respondent was crossing the road to give the signals, told him to give the signals from any place, wherever he happened to be, and instructed him by motions to pull the main wire, which was on the left of the road, near it and within the bight of the cable. The foreman denied

this, but also testified that he himself sometimes gave signals by the main line from the stump on the bank apparently where the respondent was standing when he was injured. The respondent also testified that he was not warned of the dangers of getting in the bight of the cable, nor of the danger from swinging logs. Several of the appellant's witnesses testified that he was so warned repeatedly. But if the respondent's testimony is to be believed, he was not warned, and the instructions of the foreman to signal from wherever he might be was calculated to allay his caution. *Anustasakas v. International Contract Co.*, 57 Wash. 453, 107 Pac. 342. The skid boss testified that he knew the respondent was not a practical woodsman or logger. It would seem that such a man should be thoroughly cautioned as to the dangers of the work. The credibility of the witnesses and the weight of the evidence were for the jury. We cannot say, as a matter of law, either that the warning was given or that it was unnecessary. *Jancko v. West Coast Mfg. & Inv. Co.*, 34 Wash. 556, 76 Pac. 78.

II. We find the appellant's claim of assumed risk and contributory negligence equally untenable. It cannot be said that the danger of a log swinging to such a height as to strike the respondent while standing on a stump situated upon the bank six feet above where the log lay in the ravine below was a danger so obvious to a man of his limited experience as a logger that the taking of that position imposed upon him, as a matter of law, an assumption of the risk. The same consideration disposes of the charge of contributory negligence. This is especially true in view of the fact that, if his testimony is believed, in taking this position he was following the instructions of the foreman. While he was not acting under a direct order at the time, he was acting in pursuance of the general direction of the foreman to give the signals from the nearest point wherever he happened to be, and it seems clear that, after adjusting the choker in such a way that he thought it would free the log

from the obstruction on the opposite side of the ravine, he selected the point nearest and most accessible for giving the signal. It cannot be said, as a matter of law, that in so doing he did not act as an ordinarily prudent man of his experience would have acted under like instructions and conditions. Obviously, reasonable minds might differ on the subject. *Dumas v. Walville Lumber Co.*, 64 Wash. 381, 116 Pac. 1091.

Several of the assignments of error are based upon the giving of certain instructions and the refusal to give others. They are sufficiently disposed of by what we have already said of the evidence. The law of the case is well settled.

The judgment is affirmed.

FULLERTON, MAIN, and MORRIS, JJ., concur.