## Wabash Railway Company v. McDaniels.

1. This court will not re-examine the order of the Circuit Court, refusing to set aside the verdict upon the ground that the jury awarded excessive damages.
2. The same degree of care which a railroad company should take in providing and maintaining its machinery must be observed in selecting and retaining its employés, including telegraphic operators. Ordinary care on its part implies, as between it and its employés, not simply the degree of diligence which is customary among those intrusted with the management of railroad property, but such as, having respect to the exigencies of the particular service, ought reasonably to be observed. It is such care as, in view of the consequences that may result from negligence on the part of employés, is fairly commensurate with the perils or dangers likely to be encountered.

ERROR to the Circuit Court of the United States for the District of Indiana.

This was an action by McDaniels against the Wabash Railway Company to recover damages for injuries he sustained by reason of a collision of two of its freight trains, which took place on the night of Aug. 17, 1877, near Wabash, Indiana. There was a verdict in his favor. The court refused to set it aside, and, judgment having been rendered thereon, the company brought this writ of error.

The company was a common carrier, and the plaintiff a brakeman in its service at and before that date. When injured, he was at his post of duty on one of the colliding trains. The collision, it is conceded, was the direct result of negligence on the part of McHenry, a telegraphic night-operator of the defendant assigned to duty at a station on the line of its road, who was asleep when a train passed that station. Being ignorant, for that reason, that it had passed, he misled the train despatcher at Fort Wayne as to where it was at a particular hour of the night. In consequence of the erroneous information thus conveyed, the trains were brought into collision, whereby the plaintiff lost his leg, and was otherwise seriously and permanently injured.

The action proceeded mainly upon the ground that McHenry, a telegraphic operator in the service of the company, was incompetent for the work in which he was engaged, and that the

fact was known to the company at, before, and during the time of his employment.

The essential facts bearing upon the question of the company's negligence in employing McHenry are correctly summarized in one of the paragraphs of the charge to the jury. They are : —

" The tenth night after McHenry went on duty as night operator he went to sleep at his post of duty with the result already stated. He was seventeen years old but a few weeks before this employment. In June, 1876, he went into the service of the defendant, at Wabash, as a messenger boy, and continued in that service some twelve months, during which time he was instructed by Waldo, the day operator in the art of telegraphy. For this instruction Waldo exacted and received, as compensation, McHenry's wages, $10 per month. For a month or more before McHenry's employment as night operator he worked in the country, harvesting. The only knowledge that he had of telegraphy was what he acquired under Waldo, and before taking charge as night operator he had never been employed anywhere or in any capacity as operator. He was not competent, as he told you, to take press reports, but was competent, as he thought, and as Waldo and Wade (the latter his predecessor as night operator) thought, to do ordinary business, and to discharge the duty of night operator at Wabash ; his habits were good, and he was bright and industrious. Waldo had recommended McHenry to Simpson, the chief train-despatcher at Fort Wayne, as capable and faithful, and without knowing McHenry personally, or even seeing him, and, on Waldo's recommendation and what Simpson knew of McHenry's skill from having occasionally noticed at Fort Wayne his fingering the key at Wabash, Simpson directed Waldo to employ McHenry at $50 a month, or, according to Waldo's testimony, he was directed by Mr. Simpson to put McHenry in charge of the office. McHenry's father told Waldo, before the son entered on the discharge of his duties, that Waldo should have $10 a month of the son's wages if Waldo would continue to give the son attention ; to which Waldo assented. This is the father's testimony. Waldo admits that the father made the proposition to him as stated, but says

he replied that the son was competent to take charge of the office and run it without assistance. Boys no older than McHenry had successfully discharged the duties of day and night despatcher on this and other roads, and it seems to have been the custom of the company to educate its telegraph operators while serving as messenger boys. Other railroad companies, it seems from the evidence, have pursued the same course with satisfactory results."

The case was argued by *Mr. Wager Swayne* for the plaintiff in error, and by *Mr. E. E. McKay* for the defendant in error.

MR. JUSTICE HARLAN, after stating the facts, delivered the opinion of the court.

That we are without authority to disturb the judgment upon the ground that the damages are excessive cannot be doubted. Whether the order overruling the motion for a new trial based upon that ground was erroneous or not, our power is restricted to the determination of questions of law arising upon the record. *Railroad Company* v. *Fraloff*, 100 U. S. 24.

We also remark, before entering upon the consideration of the matters properly presented for determination, that it is unnecessary to express any opinion upon the question whether the plaintiff and McHenry were fellow-servants, within the meaning of the general rule that the servant takes the risks of dangers ordinarily attending or incident to the business in which he voluntarily engages for compensation, including the carelessness of his fellow-servants. The plaintiff took no exception to the instructions, which proceeded upon the ground that he and McHenry were fellow-servants, and that in accepting employment from the company they risked the negligence of each other in the discharge of their respective duties. As no such question can arise upon the present writ of error, we pass to the examination, as well of the instructions to which the defendant excepted, as of those asked by it which the court refused to give.

The court charged the jury, in substance, that the position of a telegraphic night-operator upon the line of a railroad was one of great responsibility, the lives of passengers and employés on trains depending upon his skill and fidelity; that

the company "was bound to exercise proper and great care to get a person in all respects fit for the place;" that while the defendant did not guarantee to its servants the skill and faithfulness of their fellow-servants, its duty was "to use all proper diligence in the selection and employment of a night operator," and to discharge him, after being employed, if it learned, or had reason to believe, he was incompetent or negligent; that the plaintiff had a right to suppose that the company "would use proper diligence in the selection of its telegraphic operators and all other employés whose incapacity or negligence might expose him to dangers, in addition to those which were naturally incident to his employment;" that "what will amount to proper diligence on the part of the master in the selection of a servant for a particular duty will in part depend on the character and responsibility of that duty;" that "the same degree of diligence which is required in the employment of a locomotive engineer would not be required in the employment of a fireman;" that "sound sense and public policy require that railroad companies should not be exempt from liability to their employés for injuries resulting from the incompetency or negligence of co-employés, when, by the exercise of proper diligence, such injuries might be avoided;" that the presumption is that the defendant "exercised proper diligence in the employment of McHenry, and the burden of proof of showing the contrary is upon the plaintiff;" but, "if from any cause McHenry was not a fit person to be intrusted with the responsible duties of night operator, and the defendant knew that fact, or by reasonable diligence might have known it, it is liable, for it is admitted that the plaintiff's injuries were the direct result of McHenry's negligence, and there is no proof that the plaintiff contributed to the accident by his own negligence."

To each of these instructions the defendant excepted at the time, and in proper form.

Among those asked by the company, and for the refusal to give which error is assigned, is one which presents the distinction between the propositions of law presented to the jury for its guidance, and those which the railroad company requested to be given.

It is as follows : —

" Although McHenry may have been and was guilty of negligence, and that negligence may have caused and did cause the collision which resulted in the injury to the plaintiff complained of, still the plaintiff cannot recover in this action unless it appears from the evidence that the defendant was guilty of negligence either in the appointment of said McHenry or in retaining him in his position ; and to establish such negligence on the part of the defendant, not only the incompetency of said McHenry must be shown, but it must be shown that defendant failed to exercise ordinary care or diligence to ascertain his qualifications and competency prior to his appointment, or failed to remove him after his incompetency had come to the notice of the defendant or to some agent or officer of defendant having power to remove said McHenry."

The court modified this instruction by striking out the word " ordinary " in the only place where it occurred, and inserting in lieu thereof the word " proper." Thus modified the instruction was granted, the defendant excepting, at the time, to the refusal to give the instruction in the form presented.

The main contention of the defendant is that the jury were instructed that the duty of the company was to observe " proper and great care," when they should have been instructed that only ordinary care was required in the appointment and retention of its employés. The former degree of care, it is contended, is matter of opinion upon a question of law, while the latter is a question of fact. And the argument of counsel is, that the question of ordinary care is to be determined by the usages or custom which obtain in railroad management, and, therefore, the proper inquiry is not what ought to be, but what is, the general practice in that business; that what the servant is presumed to know, and to have accepted as the basis of his employment, is the practice or custom as it is when, in hiring his services, he risks the dangers incident to his employment ; that the law presumes that master and servant alike contract with reference to that which is equally within their observation and inquiry ; consequently, the company was required, in the selection of plaintiff's fellow-servants, whose negligence might endanger his personal safety, not to observe " proper and great "

(which counsel insists mean peculiar) care, but only that degree of diligence which the general practice and usage of railroad management sanctioned as sufficient.

In *Hough* v. *Railway Company*, 100 U. S. 213, it was decided that among the established exceptions to the general rule as to the non-liability of the common employer to one employé for the negligence of a co-employé in the same service, is one which arises from the obligation of the master, whether a natural person or a corporate body, not to expose the servant, when conducting the master's business, to perils or hazards against which he may be guarded by proper diligence upon the part of the master; that the master is bound to observe all the care which prudence and the exigencies of the situation require, in providing the servant with machinery or other instrumentalities adequately safe for use by the latter; and that it is implied in the contract between the master and the servant, that, in selecting physical means and agencies for the conduct of the business, the master shall not be wanting in proper care. It was further said that the obligation of a railroad company, in providing and maintaining, in suitable condition, machinery and apparatus to be used by its employés, is the more important, and the degree of diligence in its performance the greater, in proportion to the dangers which may be encountered; and that "its duty in that respect to its employés is discharged when, but only when, its agents, whose business it is to supply such instrumentalities, exercise due care as well in their purchase originally as in keeping and maintaining them in such condition as to be reasonably and adequately safe for use by employés."

These observations, as to the degree of care to be exercised by a railroad corporation in providing and maintaining machinery for use by employés, apply with equal force to the appointment and retention of the employés themselves. The discussion in the adjudged cases discloses no serious conflict in the courts as to the general rule, but only as to the words to be used in defining the precise nature and degree of care to be observed by the employer. The decisions, with few exceptions, not important to be mentioned, are to the effect that the corporation must exercise ordinary care. But according to the

best-considered adjudications, and upon the clearest grounds of
necessity and good faith, ordinary care, in the selection and
retention of servants and agents, implies that degree of dili-
gence and precaution which the exigencies of the particular
service reasonably require.    It is such care as, in view of the
consequences that may result from negligence on the part of
employés, is fairly commensurate with the perils or dangers
likely to be encountered.    In substance, though not in words,
the jury were so instructed in the present case.    That the
court did not use the word "ordinary" in its charge is of no
consequence, since the jury were rightly instructed as to the
degree of diligence which the company was bound to exercise
in the employment of telegraphic night-operators.    The court
correctly said that that was a position of great responsibility,
and, in view of the consequences which might result to em-
ployés from the carelessness of telegraphic operators, upon
whose reports depended the movement of trains, the defendant
was under a duty to exercise "proper and great care" to select
competent persons for that branch of its service.    But that
there might be no misapprehension as to what was in law
such care, as applicable to this case, the court proceeded, in
the same connection, to say that the law presumed the exercise
by the company of proper diligence, and unless it was affirma-
tively shown that the incapacity of McHenry when employed,
or after his employment and before the collision, was known
to it, or by reasonable diligence could have been ascertained,
the plaintiff was not entitled to recover.    Ordinary care, then,
— and the jury were, in effect, so informed, — implies the
exercise of reasonable diligence, and reasonable diligence im-
plies, as between the employer and employé, such watchful-
ness, caution, and foresight as, under all the circumstances of
the particular service, a corporation controlled by careful, pru-
dent officers ought to exercise.

These observations meet, in part, the suggestion made by
counsel, that ordinary care in the employment and retention
of railroad employés means only that degree of diligence
which is customary, or is sanctioned by the general practice
and usage, which obtains among those intrusted with the man-
agement and control of railroad property and railroad em-

ployés.   To this view we cannot give our assent.   There are general expressions in adjudged cases, which apparently sustain the position taken by counsel.   But the reasoning upon which those cases are based is not satisfactory, nor, as we think, consistent with that good faith which, at all times, should characterize the intercourse between officers of railroad corporations and their employés.   It should not be presumed that the employé sought or accepted service upon the implied understanding that they would exercise less care than that which prudent and humane managers of railroads ought to observe.   To charge a brakeman, when entering the service of a railroad company, with knowledge of the degree of care generally or usually observed by agents of railroad corporations in the selection and retention of telegraphic operators along the line traversed by trains of cars — a branch of the company's service of which he can have little knowledge, and with the employés specially engaged therein he can ordinarily have little intercourse — is unwarranted by common experience.   And to say, as matter of law, that a railroad corporation discharged its obligation to an employé — in respect of the fitness of co-employés whose negligence has caused him to be injured — by exercising, not that degree of care which ought to have been observed, but only such as like corporations are accustomed to observe, would go far towards relieving them of all responsibility whatever for negligence in the selection and retention of incompetent servants.   If the general practice of such corporations in the appointment of servants is evidence which a jury may consider in determining whether, in the particular case, the requisite degree of care was observed, such practice cannot be taken as conclusive upon the inquiry as to the care which ought to have been exercised.   A degree of care ordinarily exercised in such matters may not be due, or reasonable, or proper care, and therefore not ordinary care, within the meaning of the law.

It is further objected to the charge that the court below confounded the degree of care owed as a duty to passengers with the degree of care to be observed in the case of employés. This objection necessarily rests upon the assumption that the instruction as to the exercise of "proper and great care" in the

selection of telegraphic night-operators accurately stated the degree of diligence to be observed as between the railroad company and passengers. But clearly the statement in the charge that the lives of both passengers and employés depended upon the skill and fidelity of telegraphic operators, employed by the corporation in connection with the movement of its trains, was not for the purpose of indicating, with legal precision, the degree of care upon which passengers could rely in all matters affecting their safety. They, at least, have the right to expect the highest or utmost, not simply a great degree of diligence on the part of passenger carriers and all persons employed by them. The reference, therefore, to passengers, in the instructions alluded to, was not calculated to make the impression that employés could count upon the same degree of care that is required by law towards passengers. Whether in the selection and retention of telegraphic operators, upon whose capacity and watchfulness largely depends the personal safety of employés on trains, a corporation should or not exercise the same degree of care which must be observed in the case of passengers, it is not necessary now to consider or determine. It is sufficient to say that the corporation was bound, in the appointment and retention of such operators, to observe, as between it and its employés, at least the degree of care indicated in the charge to the jury.

Among the instructions asked in behalf of the company, the refusal to give which is the basis of one of the assignments of error, is the following : —

" To render the carelessness of said McHenry the carelessness of the defendant, or to render the defendant liable for the same, it is incumbent on the plaintiff to prove that said McHenry was appointed to or retained in his position as telegraph operator with knowledge on the part of the company, or some officer or agent of the company having the power of appointment or removal, that he was incompetent, or that such knowledge might have been obtained by the use of reasonable diligence on the part of the defendant, or of such officer or agent of the defendant."

It is now complained that the refusal to give this instruction was practically a declaration to the jury that the company was

responsible for knowledge which it had through any of its agents or through its agents generally ; whereas it was liable only for the negligence or omission of those of its agents who were charged with the duty of selecting and controlling its employés and its general business. It is sufficient to say that this point—assuming the instruction in question to be correct—was covered by the last clause of the instruction to which our attention was first directed, and in terms quite as favorable to defendant as it was entitled to under the law. The court, in that instruction, expressly said that to establish the alleged negligence, not only the incompetency must be shown, " but it must be shown that the defendant failed to exercise proper care or diligence to ascertain his qualifications and competency prior to his appointment, or failed to remove him after his incompetency had come to the notice of defendant or to some agent or officer of defendant having power to remove said McHenry."

It is not necessary to further extend the discussion of the questions pressed upon our consideration. We are of opinion that the case, in all of its aspects, was fairly placed before the jury in the instructions given by the court. No substantial error of law was committed to the prejudice of the company.

*Judgment affirmed.*