GARNETT v. PHŒNIX BRIDGE CO.

(Circuit Court E. D. Pennsylvania. November 29, 1899.)

No. 19.

1. **MASTER AND SERVANT—MASTER'S DUTY AS TO APPLIANCES FURNISHED.**
   The relation of master and servant is not analogous to that of guardian and ward, and the obligation of the master in regard to appliances furnished for the use of the servant is no different from what it would be if such appliances were furnished for the use of one not a servant, his liability in either case being measured by his failure to use ordinary care to see that they are reasonably safe for the use to which they are to be applied.

2. **SAME—INJURY OF SERVANT—UNSAFE APPLIANCES.**
   A master cannot be held liable for an injury received by an adult servant by falling from a trestle on which he was standing, which was eight feet high and five inches broad at the top, on the ground that such trestle was not a reasonably safe appliance for the purpose for which it was used, no objection having been made thereto by the servant.

3. **SAME—FITNESS OF APPLIANCES—TOOLS NOT INHERENTLY DANGEROUS.**
   The rule that appliances furnished by a master must be reasonably fit for the purpose for which they are to be used has reference to their fitness with relation to the safety of the employé using them, and the fact that a wrench furnished by a master for the use of the employé in screwing nuts upon iron rods broke because of insufficient strength for the work cannot render the master liable for an injury received by the servant by falling in consequence of the breaking of the wrench, as the wrench itself

was not a dangerous tool, and the injury resulting from its breaking was one that could not have reasonably been anticipated.

4. SAME—DUTY OF MASTER TO INSTRUCT SERVANT.

The failure of a master to instruct an adult servant of average intelligence as to the manner in which he should use a wrench in screwing nuts on a rod so as to avoid falling in case the wrench should break is not negligence.

On Motion by Plaintiff for a New Trial.

A. S. Ashbridge, Jr., for plaintiff.

Joseph H. Taulane and Richard P. White, for defendant.

DALLAS, Circuit Judge. This action was brought to recover for personal injury suffered by the plaintiff, in consequence, as alleged, of the negligent conduct of the defendant. When the accident occurred the plaintiff was a man of about 40 years of age, and of at least ordinary intelligence. Having previously been employed successively in two rolling mills, he, in May, 1896, entered the service of the defendant corporation, which was then engaged in erecting the board walk on the beach at Atlantic City. At first, and for about two weeks, he helped to raise girders with a windlass, and then he was sent out into the water to loosen an endless rope from joists which were brought by sea near to the shore. The men who composed "the riveters' gang" were required to "use the hammer to set and rivet the heads." They were paid higher wages than the plaintiff received, and for this reason he, although he had never done such work, applied, but unsuccessfully, to be put upon that gang. His wages were, however, made equal to those of a riveter; and on July 23, 1896, a Mr. Fisher, whom the plaintiff, in testifying, characterized as "the superintendent in charge of this work," gave the plaintiff a wrench about 18 inches long, and told him to help tighten the nuts upon the rods which extended from beam to beam, or from girder to girder; and this the plaintiff, though inexperienced in the use of a wrench, and without receiving or asking any instructions, proceeded to do. In doing it he stood upon a trestle about eight feet in height and five or six inches in width at its top, which rested upon the sand directly under the board walk. The wrench was designed to fit a two-inch nut, and its length had been extended by adding about two feet of pipe to it. At the time of the accident the plaintiff was standing on the top of the trestle, and was holding with his left hand to one of the girders. He had set the wrench on a nut which was about two feet above his head, and pulled with his right hand on the end of the piece of pipe until, when about one turn had been made, the wrench opened in the jaw, and he, in consequence, fell from the trestle, and was seriously hurt. These are the facts, so far as material, to which the plaintiff himself testified, and this statement of them substantially presents his own story of the accident and the attending circumstances.

There is, perhaps, no rule which has been more frequently enunciated by the courts than that which defines the master's duty respecting the appliances provided by him for the use of his servants, and yet there is probably no rule which is more constantly invoked

without properly regarding its principle and limitations. The relation of master and servant is not analogous to that of guardian and ward. The employed is not to be regarded as an infant, nor the employer as his caretaker. A master owes no duty to his servant, which, under like circumstances, he does not owe to any other person. "Negligence is where a person neglects or omits to do a thing which he is by law obliged to do," and the legal obligation of a master to take ordinary care for the prevention of harm to his servant does not result from any doctrine which is peculiar to the contract for personal service, but from the general rule that every one is, in his acts and conduct, bound to be duly careful to avoid doing hurt to others. Wherever, by invitation, and not as a trespasser, one man comes upon the premises of another, or is, as matter of business, supplied by another with any article which is liable to inflict injury when being used, he, though not a servant, is entitled, precisely as if he were, to assume that the place or the article is reasonably safe, and to be informed of any latent source of danger of which he is ignorant. Dixon v. Bell, 5 Maule & S. 198; Thomas v. Winchester, 6 N. Y. 397; Smith v. Railroad Co., 19 N. Y. 127; Caswell v. Worth, 5 El. & Bl. 849; Blakemore v. Railroad Co., 8 El. & Bl. 1035; MacCarthy v. Young, 6 Hurl. & N. 329; Copeland v. Draper, 157 Mass. 558, 32 N. E. 944, 19 L. R. A. 283; Story, Bailm. §§ 275, 390, 391a; Redf. Carr. § 513, note. The relation of master and servant existed between the plaintiff and the defendant at the time this accident occurred. Therefore, while the plaintiff had assumed all the risks incident to his employment, the defendant, though not the guardian of his person, had become bound to protect him from any injury, while pursuing that employment, which might be averted by the exercise of ordinary care to furnish him with reasonably safe appliances. The France, 20 U. S. App. 215, 8 C. C. A. 185, 59 Fed. 479; Paving Co. v. Odasz's Adm'x, 20 U. S. App. 326, 8 C. C. A. 471, 60 Fed. 71; Reilly v. Campbell, 20 U. S. App. 334, 8 C. C. A. 438, 59 Fed. 990; Baulec v. Railroad Co., 59 N. Y. 356–359. "The liability of the master for injuries to the servant received in the service is based upon his personal negligence, and the evidence must establish some personal fault or neglect of duty on his part, or what is equivalent thereto, in order to justify a verdict, and he is entitled to the presumption that he has performed his duty until the contrary is made to appear. * * * If the injury to the servant is attributable to the master's neglect in omitting to furnish safe and adequate appliances for the work, according to the nature of the business, or competent co-servants, or even if he neglects to give persons unacquainted with the use of machinery proper instruction with respect to its use, he is liable." Crown v. Orr, 140 N. Y. 450, 35 N. E. 648. Unless, then, some breach of duty—some fault—on the part of the defendant has been made to appear, the present action, it must be conceded, cannot be maintained. But it is insisted that a threefold violation of duty has been shown, in that an unfit trestle was furnished, an unfit wrench was supplied, and no instruction respecting the use of the latter was given. The vague complaint which is made of the trestle is utterly groundless, and, as I believe, an afterthought. That a robust man, accustomed to physical

labor, incurred peril, and one not ordinarily incident to such labor, by standing, while tightening a nut, upon a trestle of sufficient strengh to bear his weight, and which was but eight feet high and was five inches in width, cannot rationally be supposed; and I feel quite sure that, if the plaintiff had been told at the time he went upon this structure that he was placing himself in a situation of danger, he would himself have scouted the suggestion. At all events, there was nothing about the trestle which he could not see and understand, and, as he then made no objection to it, he has no right to do so now. With reference to the wrench, the question presented is apparently more substantial, but its right solution may, I think, be easily reached if the true nature and scope of the master's obligation be precisely borne in mind. The obligation referred to has frequently been said to require that the machinery and appliances provided for the use of the servant shall be reasonably, not absolutely, fit; but this terse statement of the matter is deficient because of its omission to define the term "reasonably fit," and to supply this omission those cases must be consulted in which it has been held that reasonable fitness is such as may be attained by the bestowal of that degree of care and diligence which, under the circumstances, and in view of the nature of the work to be done, an ordinarily prudent master, if properly regardful of the welfare of his servants, would exercise for their safety. Reilly v. Campbell, supra; Baulee v. Railroad Co., supra; Hough v. Railway Co., 100 U. S. 213, 25 L. Ed. 612; Railway Co. v. McDaniels, 107 U. S. 454, 2 Sup. Ct. 932, 27 L. Ed. 605. The interest of employers themselves is so strongly in favor of providing instrumentalities suitable for their business that it may well be left to their discretion to determine their fitness for the purpose for which they are intended. Tuttle v. Railroad Co., 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. Ed. 1114. To see that they are so may be said to be a duty which the master owes to himself; but his duty to the servant relates to safety, and to nothing else. Therefore, if it be assumed that the breaking of the wrench in this instance resulted from its lack of sufficient strength, and not from the manner of its use, yet the bare fact of its breaking did not concern the plaintiff; and that, by its breaking, any injury would be occasioned to him, no foresight short of prophetic vision could even have suggested; and consequently it is impossible to presume that a man of ordinary prudence would have taken thought to prevent it. It is not necessary to hold—and I do not say—that the master's liability attaches only where the article in question is inherently very dangerous, involving "death or great bodily harm to some person, as the natural and almost inevitable consequence" of omission of care (Thomas v. Winchester, supra); but I am of opinion that, where the implement, though defective, might, and commonly and generally would, be used without the slightest risk, the master is not called upon to apprehend the occurrence of an extraordinary mishap which he could not have reasonably contemplated as a probable consequence of the existence of the defect. As "illustrations of liability for instrumentalities," there are enumerated in Shear. & R. Neg. § 197, "defects in ropes, ladders, derricks, shafts of a mine, buildings, locomotives, cars, car buffers, brakes, couplings,

railway tracks, machinery, and elevators"; and the materiality, under the circumstances of this case, of the difference between any of these instrumentalities and the tool here involved is manifest, inasmuch as no diligence is required where none could reasonably be demanded by the exigencies of the particular service, or where, in view of the consequences that may result, caution is not called for by any peril or danger which is likely to be encountered. Railway Co. v. McDaniels, 107 U. S. 460, 2 Sup. Ct. 932, 27 L. Ed. 605. The knives of a planing machine, the saws of a sawmill, the revolving wheels of a factory, and many other mechanical devices and accessories, are, in their nature, dangerous, and therefore the employer is justly required to adopt proper measures for the protection of those engaged in and about their operation; but the notion that the conductors of the vast industrial enterprises which distinguish our age and country are deficient in ordinary prudence if they do not take care that none of the many to whom they give employment shall be hurt through the breaking of a handsaw, a hammer, or a wrench, is repugnant to common sense and defamatory of the law. The plaintiff did not ask for instructions, and none could have been given which would have been of any use. He might have been told that, if he should rely upon his grip of the wrench to support him on the trestle, he would be likely to fall upon the hard sand below and be hurt, in case the wrench should either break or slip from the nut. But this, of course, was as obvious to him as to anybody else; and, indeed, it is evident that he quite well understood that the wrench was not intended, and could not be depended upon, to secure him against falling, for he took the natural precaution of holding on to a girder. I do not think that contributory negligence should be imputed to him because this was not so done as to be efficacious, but surely the defendant is not to blame that it was not so.

It is not necessary to review the evidence at length. It contains nothing which would warrant any modification of the views I have expressed. The testimony of the witness who was examined as an expert on behalf of the plaintiff went to the question of general fitness, and not of safety. Moreover, the opinion to which he testified was wholly based upon his examination of an especially prepared wrench, which was produced as an exhibit upon the trial, and its relevancy, therefore, was dependent upon the correctness of the hypothesis that this model wrench was, in its material features, identical with the actual wrench in question; and that it was not so in fact was distinctly and absolutely proved. The plaintiff's motion for a new trial is denied.