[No. 11892.    Department One.    June 30, 1914.]

REGINALD POTTS, *Respondent*, v. JOHN FORTUNE, *Appellant*.[1]

MASTER AND SERVANT—FELLOW SERVANTS—COMMON EMPLOYMENT. A teamster and his helper are fellow servants, where they were engaged in transferring from another wagon to the plaintiff's wagon a heavy steel shaft, which fell and injured plaintiff.

MASTER AND SERVANT—NEGLIGENCE—QUESTION FOR JURY. Whether a teamster's helper was guilty of negligence in releasing his hold on the end of a steel shaft without notifying the teamster, is a question for the jury, where there was room for a reasonable difference of opinion.

SAME — EMPLOYMENT OF INCOMPETENT FELLOW SERVANT — NEGLIGENCE—EVIDENCE—SUFFICIENCY. A master is not negligent in employing a teamster's helper, where, before hiring him, he inquired of his former employer as to his qualifications and was assured that he was a good man; the employment being simple.

SAME—NOTICE OF INCOMPETENCE. A master is not negligent in retaining in his employ a teamster's helper, engaged in simple work, who was recommended by his former employer, merely on account of notice that he was quick and hasty in his actions, and where, on complaint made, no promise was given that he would be discharged.

Appeal from a judgment of the superior court for King county, Humphries, J., entered October 10, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a teamster. Reversed.

*Chas. E. McAvoy*, for appellant.

*Jay C. Allen*, for respondent.

[1]Reported in 141 Pac. 697.

ELLIS, J.—Action for personal injuries.  The defendant was engaged in the transfer business in the city of Seattle. The plaintiff was in his services as a teamster from July, 1912, to early in September, 1912.  On Wednesday, August 21, 1912, the defendant employed one George as teamster's helper.  This employment was only temporary, pending the arrival of a man whom defendant had employed regularly for that work.  It began at noon of August 21, and continued for the next three or four days.  One Sayre, who was doing business as the Georgetown Reliable Transfer Company, for whom George had worked for short periods from time to time during the previous three or four years, upon inquiry by the defendant, recommended George as a good man, and sent him to see the defendant.  On August 22, the plaintiff and this man George were transferring, from another wagon to the wagon of which the plaintiff was the driver, a steel shaft, a fraction under two inches in diameter, twenty feet long, and weighing 167 pounds, one of the men standing at either end.  The evidence tended to show that George released his end of the shaft prematurely, causing the plaintiff to catch his right hand between the shaft and the sideboard on the wagon, crushing the middle finger.  The plaintiff continued to work until September 3, when, infection having developed, he went to a doctor, and subsequently to a hospital.  The finger was subjected to several operations, and was finally amputated at the second joint.

The negligence charged was that the man George was unfit and incompetent for, and inexperienced in, the work of a teamster's helper, of which the defendant had notice and had previously been informed, but, notwithstanding such knowledge, retained the man George in his employ and sent him to assist the plaintiff in doing the work in which he was injured. The answer denied any knowledge on the defendant's part that George was incompetent or inexperienced, and affirmatively alleged that the defendant, prior to employing George, made inquiry of his former employers, and was informed that

he was, in fact, an experienced teamster's helper, thoroughly competent, being a man of about 29 years of age, and mentally and physically normal. The answer also interposed the affirmative defenses of injury by negligence of a fellow servant, plaintiff's negligence contributing to the original injury, and that the amputation of the finger was caused by the negligence and carelessness of the plaintiff after the original injury was received. These affirmative defenses were traversed by the reply. When the evidence was all in, the defendant moved for an instructed verdict in his favor, which motion was overruled. The jury returned a verdict for the plaintiff in the sum of $352.50. The defendant moved for a judgment notwithstanding the verdict, and, in the alternative, for a new trial. These motions were also overruled, and judgment was entered upon the verdict. The defendant appealed.

It is conceded, as, of course, it must be, that the plaintiff and George were fellow servants. *Mercer v. Lloyd Transfer Co.*, 59 Wash. 560, 110 Pac. 389. Whether the helper, George, was guilty of negligence in prematurely releasing his end of the shaft without warning was a question for the jury. There was evidence that, in such work, it is customary for the driver to take the lead in the work and notify his helper when to let go, and if the helper, for any reason, finds it necessary to release his hold before such notice, he should notify the driver in order to avoid injury. Whether the admitted failure to do so in this instance was negligence on the helper's part is a question upon which there might be reasonable difference of opinion. In such a case, the question is always one for the jury.

The only remaining question in this case is whether the appellant was negligent in employing and retaining in his service an incompetent helper. This question, as in every other phase of negligence, is one of ordinary care, which implies only that degree of care and precaution which the exigencies of the particular service reasonably require. *Wabash R.*

*Co. v. McDaniels*, 107 U. S. 454; *Emery v. Tacoma*, 71 Wash. 132, 127 Pac. 851. Labatt states what we conceive to be the correct rule. After pointing out that a master would not ordinarily be justified in assuming that a person who seeks a position is qualified to fill it, he says:

"It is therefore well established that, where the service in which the servant is to be employed is such as to endanger the lives and persons of coemployees, the master, before engaging such servant, is required to make reasonable investigation into his character, skill, and habits of life. An exception to this rule is admitted where the work is of a simple kind, which anyone of fair intelligence and requisite physical ability is competent to perform. This investigation need not necessarily assume the form of questioning an applicant for work as to his competency. An omission to do this is negligence only when there is no better source of information at hand, and cannot be imputed as culpable where information is sought from the applicant's former employer. On the other hand, the employer's duty is fully discharged if he makes careful inquiry into the habits and competency of the men employed, and upon such inquiry believes, and has good reason to believe, them sober and competent and careful." 3 Labatt, Master & Servant (2d ed.), § 1097.

See, also, *Timm v. Michigan Cent. R. Co.*, 98 Mich. 226, 57 N. W. 116; *Gier v. Los Angeles Consol. Elec. R. Co.*, 108 Cal. 129, 41 Pac. 22. Judged by this rule, it is obvious that the defendant did all that the law required of him in employing the man George. He inquired of his former employer as to his qualifications, and hired him on the assurance that he was a good man. The appellant did not know George. He was in temporary need of a man for the most simple employment. There was nothing unusual or dangerous about it. It was as simple and free from complications as any task in which two men could be required to cooperate. It required no special skill or training, and but little, if any, experience, for its safe and proper performance. It is a matter of common sense which no amount of so-called expert opinion could

either modify or change that the only necessary qualification for such work was normal mental and physical capacity. It is admitted that George possessed both of these. Under the evidence, we are clear that the appellant was guilty of no negligence in his original employment of this helper.

The question remains, did he negligently retain the man after notice of his incompetence? The only evidence that George was in any manner unfit was that of certain teamsters with whom he had worked while in the employ of the Georgetown Reliable Transfer Company, the one who put the matter most strongly testifying, in substance, that he had worked with George as helper when he, the witness, was driving a furniture van; that George was reckless with the furniture; that he was quick and did not pay any attention to the man working with him; that "you have to keep track on him yourself or he will get something broke or get hurt." When asked how a helper should do his work, he answered, "He should be careful, take the work and do it right, and be careful, especially in furniture. You can break up furniture pretty fast if you do not handle it carefully, especially fine furniture; scratch and mar it." There was no evidence that he had ever injured any one or that he had ever come near doing so. There was no evidence that any one had ever seriously regarded him as a man with whom there was any personal danger in working. Assuming, however, that the evidence was such as to take the case to the jury on the question of dangerous incompetence of the helper, we believe, nevertheless, that the evidence of the notice of that fact to the appellant was not such as, under the circumstances to charge him with negligence in retaining George in his employment. The respondent testified that, prior to the accident, he notified the appellant that he had heard George was incompetent; that he did this on two or three occasions, testifying:

"I told him that the drivers for the Georgetown Transfer Company had told me that they would refuse to work with him—that the boys refused to work with him (George);

that he would do everything in a hurry, and therefore did more damage than good; that he was a sound man and could do lots, but he wanted to do it in a big rush. I was kind of leary of the man myself; I did not want to work with him. Mr. Fortune replied, saying he was all right; I thought Mr. Fortune knew more about it than I did; he was running his business and that if he thought the man was all right, he was all right."

On cross-examination, it clearly developed that, if the respondent spoke of this matter more than once to the appellant, all save the first instance were after the respondent's injury. He testified that the second conversation was on a Saturday evening while George was working for the appellant. The evidence is conclusive that George worked for the appellant only one Saturday, and that was the second day after the injury. The appellant had never known George prior to employing him. The respondent had known of George for some time, but was not personally acquainted with him prior to that time. It is obvious that the respondent's knowledge of George's incompetence, assuming that he was incompetent, was much more specific and certain than that of the appellant even after the first conversation. It is clear from the respondent's own testimony that the appellant gave him no promise to discharge George, nor did he say anything which could have left the impression in the respondent's mind that George would be discharged. Notwithstanding the rumors which the respondent claims to have communicated to the appellant prior to the accident, we think, in view of the simple character of the work, the appellant was justified, as a matter of law, in relying upon the assurance of George's former employer that he was a good man, and retaining him in his employ, in the absence of anything more specific than respondent's information as to his reported hasty character. The case would be different had the respondent remained in the appellant's employment under a promise on the appellant's part to investigate, and, if he found the man incompetent, to discharge him. No such promise having been given,

the respondent assumed whatever risk could be anticipated, by remaining in appellant's employment. True, assumption of risk was not specifically pleaded, but it was developed by respondent's own testimony. The necessity for the specific plea was thus waived. Respondent's negligence in remaining in the employment with his own admittedly greater knowledge than that of the appellant, of the character of the man George was negligence concurring with whatever negligence may be attributed to the appellant in the premises.

This case, as it seems to us, is ruled by the case of *Cavelin v. Stone & Webster Engineering Corp.*, 61 Wash. 375, 112 Pac. 349, both upon the law and the facts. In that case, this court, speaking through Judge Rudkin, said:

"The only evidence offered tending to show the incompetency of Melburg, or knowledge of such incompetency on the part of the master, was some slight testimony to the effect that 'he appeared to be nervous,' 'in a hurry about his work,' and had broken the line and pulled the nail on one or two previous occasions. Such testimony, in our opinion, is utterly insufficient to show incompetency in a common mason or bricklayer. He was not employed to operate or handle dangerous agencies or dangerous machinery, and had only been engaged on this particular work for an hour or two at best before the accident. The duty assigned him was such as falls to the lot of every workman. There was nothing unusual or dangerous about it, and no special skill or experience was requisite to its safe and proper performance. True, there was some testimony tending to show that it required some experience to qualify one to properly perform this simple task, but it is a matter of common knowledge, known to all men, that it requires no peculiar skill or knowledge to qualify one to safely stretch a small line forty feet in length, and so-called expert testimony to the contrary imposes too great a tax on the credulity of either court or jury."

Every view of the case constrains us to hold that the evidence of dangerous incompetence on George's part, and of negligence on the appellant's part, was entirely insufficient to take the case to the jury. To hold otherwise would be, in effect, to render every transfer man, every farmer, and every

person employing two or more men in the most simple and ordinary tasks, an insurer of the safety of his employees against the slightest negligence or haste on the part of co-laborers. Such a rule has never been announced by any court, so far as we are advised. The evidence was wholly insufficient to sustain the verdict.

The judgment is reversed, and the cause is remanded for dismissal.

CROW, C. J., GOSE, CHADWICK, and MAIN, JJ., concur.