James G. BROWN et al., Appellants,

v.

Martha LUNDELL et al., Appellees.

No. 6925.

Court of Civil Appeals of Texas.

Amarillo.

March 21, 1960.

Rehearing Denied April 18, 1960.

Stubbeman, McRea, Sealy & Laughlin, Midland, and Durward D. Mahon, Lubbock, for appellants.

Allison & Allison and Dwight R. Mann, Levelland, for appellees.

NORTHCUTT, Justice.

Appellees brought this action against appellants to recover damages for permanent injury to land caused from pollution of the fresh water strata underlying the farm covered by appellants' oil and gas lease. It was appellees' contention that appellants were guilty of negligence proximately causing the pollution and damage in permitting and allowing salt water to escape from their salt pit into the subsurface strata of appellees' land and into appellees' irrigation well by negligently and carelessly permitting and allowing salt water to collect in surface pits from which they knew or by exercise of ordinary care should have known that salt water would escape and flow and percolate in such a way as to pollute appellees' fresh water supply. Appellees further contended appellants negligently and carelessly failed and omitted to adopt any approved method or any effective method of disposing of the salt water to prevent pollution of the fresh water strata and failed to return said salt water into wells from which it was pumped or into an abandoned well or placing the same in a watertight container and negligently and carelessly failed and omitted to seal the surface of the pits in which appellants caused, permitted or allowed the salt water to flow.

Appellants defended on the grounds that, first, as the owner and operator of the oil

and gas lease, it had the right to produce and treat the oil and dispose of the salt water in the usual and customary earthen burning pits without incurring the burden and expense of using steel tanks or drilling a deep water input well, so that it owed no duty to appellees to enclose the pit being used as a proper and reasonably necessary incident to the production of the oil; second, appellant had especially bought the right to use the land for the permanent burning pit alongside of the tank batteries, in which pit the salt water had been deposited, and appellees had consented to such use of the premises; third, appellant had continued its operations in accordance with the uniform custom and there was no proof that such custom was itself negligent; and further, there was no proof of negligence on the part of appellants and there was no proof of foreseeability, that is, proximate cause, and that the answers of the jury finding negligence and proximate cause were so against the great and overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

The case was submitted to a jury upon special issues, and in answer thereto the jury found that the salt water from appellants' disposal pit in question penetrated the subsurface fresh water strata; that the salt water escaping from appellants' disposal pit in question reached and polluted appellees' irrigation well No. 1; that appellants were negligent in permitting salt water to escape from their disposal pit; that such negligence was a proximate cause of salt water pollution of appellees' irrigation well No. 1; that appellant, in disposing of their salt water, failed to protect the fresh water strata from pollution; that such failure was negligence and a proximate cause of such pollution; that appellees suffered damage by reason of such pollution of their irrigation well No. 1; that such pollution of well No. 1 was permanent; that the reasonable market value of appellees' land immediately before the salt water pollution of irrigation well No. 1 was $88,837.50 and the reasonable market value of the land im-

mediately after the salt water pollution of their irrigation well No. 1 was $65,662.50. The jury also found that the salt water pollution of irrigation well No. 1 was not an unavoidable accident. The trial court rendered judgment for appellees in the sum of $23,175.00, being the difference in the reasonable market value before and after the pollution. From this judgment the appellants perfected this appeal. Under this record it is clearly shown appellees' fresh water strata as to well No. 1 was polluted.

By appellants' first point of error it is contended that the trial court erred in overruling appellants' motion for discovery and inspection whereby appellants sought authority to drill a water well on the eastern portion of the appellees' land to test and inspect the water and water sand under that portion of the property. The well claimed to have been polluted was located in the northwestern portion of the land. We are not called on to determine whether Rule 167 of Texas Rules of Civil Procedure applies to a case of this kind; but we are of the opinion that it would be necessary in sustaining appellants' Point 1 to find that the trial court abused its discretion in overruling appellants' motion for discovery. Robb v. Gilmore, Tex.Civ.App., 302 S.W.2d 739. We do not believe the court abused its discretion. But be that as it may, we think, under the undisputed evidence in this case, it was shown that if the well had been drilled in the northeast portion of this land, as requested in the motion for discovery, that the water at that location would not at that time have been polluted. The drilling of the well as requested could not have produced any more evidence than was admitted. This case was predicated upon the pollution of well No. 1. If the refusal was error, but we do not believe it was, it would be a harmless error. We overrule appellants' first point of error.

By appellants' other assignments of error they complain of the refusal of the trial court to give an instructed verdict for

appellants under the theory that since they owned the oil and gas lease they had the right to use so much of the premises and in such manner as was reasonably necessary to comply with the terms of the lease and effectuate its purposes; further contending they complied with the usual and customary manner of producing and saving the oil and gas as was usual and customary in that vicinity; that appellees sold appellants the right to use a particular part of the land for permanent burning pit for disposal of the salt water and consented to such disposal and that there was no proof that such custom itself was negligent; that there was no evidence of negligence on the part of appellants and because the great and overwhelming weight and preponderance of the evidence showed and established that there was no negligence on the part of appellants and the answers of the jury were against the great weight and preponderance of the evidence as to be manifestly wrong and unjust; that there was no evidence that appellants could have reasonably foreseen pollution of the irrigation well by depositing the salt water into the permanent disposal pit. We have carefully considered all of the evidence and are of the opinion that the findings of the jury are not against the great weight and preponderance of the evidence as to be manifestly wrong, but there is sufficient evidence to sustain the verdict of the jury. In the case of Comanche Duke Oil Co. v. Texas Pac. Coal & Oil Co., 298 S.W. 554, at page 563, the Commission of Appeals stated:

"It is easily conceivable that 'customary practices' might of themselves be unlawful or unreasonable or include negligence. G., C. & S. F. Ry. Co. v. Evansich, 61 Tex. 3; Fletcher v. Railway Co., 168 U.S. 135, 18 S.Ct. 35, 42 L.Ed. 411. They might include too much; contrarily, they might include too little in a failure to observe those new things which an ordinarily prudent man would do in response to advanced learning and skill. Brunke v. M., K. Tel. Co., 115 Mo.App. 36, 90 S. W. 753, 754. In the next place, when usage testimony becomes admissible in a dispute beyond the contract field, its purpose is not to fix the standard of conduct, but it is to give evidence to the trier of fact issues to aid him, in so far as it may, in applying the standard of conduct which the law itself prescribes. Cameron Compress Co. v. Whitington (Tex.Com.App.) 280 S.W. 527; T. & P. Ry. Co. v. Behymer, 189 U.S. 468, 23 S.Ct. 622, 47 L.Ed. 905; Wabash Ry. Co. v. McDaniels, 107 U.S. 454, 2 S.Ct. 932, 27 L.Ed. 605."

We are of the opinion that evidence of custom in the same trade or occupation is admissible for the consideration of the jury but it is not conclusive on the question of what constitutes ordinary care. Conformity to the general practice or custom would not excuse the appellants' failure unless it was consistent with due care. We think the trial court properly instructed the jury as compliance with custom and conformity with the usual and ordinary practices.

██ We think it is well settled in this state that the owner of an oil and gas lease has the right to use so much of the premises and in such a manner as is reasonably necessary to comply with the terms of the lease and to effectuate its purposes. Warren Petroleum Corporation v. Monzingo, Tex., 304 S.W.2d 362. This being true, we must then determine whether appellants owed appellees any duty or not before considering any question of negligence. If the appellants did not owe the appellees any duty in connection with developing this lease to effectuate its purposes then appellants would not be liable herein to the appellees. The only duty owed the appellees by the appellants was not to intentionally, willfully or wantonly injure the appellee's water strata. Warren Petroleum Corporation v. Martin, 153 Tex. 465, 271 S.W.2d 410.

█ We must consider whether there is any showing of intentional, willful or wanton acts on the part of appellant as vio-

lating any duty, and if there was, then consider the question of negligence. Since the courts have held if the appellants owed the appellees not to intentionally, willfully or wantonly injure them, then if they violated either one of the three that would be violating a duty owed the appellees. We will not consider intentionally or willfully but only consider wantonly. Wantonly is where the party doing the act or failing to act is conscious of his conduct, and, without having the intent to injure, is conscious, from his knowledge of existing circumstances and conditions, that his conduct will likely or probably result in injury. The fact that appellees gave their consent for appellants to dig and use the pit in question, and being assured no harm would result from such pits, would not be the issue here as releasing appellants under this record. Appellants' responsibility arose after realizing the salt was going some place and knew it was not evaporating. Appellants admitted, if they had stopped to think, they would have known or realized that the injury might happen. But despite such realization they continued to act as they did, and thus were negligent in the manner and way they chose to continue to dispose of their salt water and did not exercise ordinary care to avoid unnecessary damage to the appellees. The resulting damage in question was within reasonable foresight. We think wanton misconduct is such conduct manifesting disposition to perversity, and it must be under such surrounding circumstances and existing conditions that a party doing an act or failing to act must be conscious from his knowledge of surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury. We have not been cited to a case that we think is in point under the facts of this case, and neither have we found one, under the question of consent.

This record clearly shows appellants knew about the great amount of salt going into the pit and that the salt would not evaporate and knew it was going somewhere. This record is quite voluminous, and it would unduly lengthen this opinion to discuss the testimony in detail. Mr. Brown testified if he had thought about it he would have recognized that there was some danger there in that situation. Judge Critz stated in the case of Great Atlantic & Pacific Tea Co. v. Evans, 142 Tex. 1, 175 S.W.2d 249, 251, "Negligence rests primarily upon two elements: (a) reason to anticipate injury, and (b) failure to perform the duty arising on account of that anticipation." See other cases there cited. With the great amount of salt being here produced, and appellants having the records of the amount of salt produced together with all of the other evidence introduced and the admissions of appellants, we believe appellants had sufficient reason to anticipate injury and that they failed to perform the duty arising on account of that anticipation, and that the jury was justified in finding as it did in answering the issues submitted. Appellants' assignments of error are overruled.

Judgment of the trial court is affirmed.

## On Motion for Rehearing

Both parties have moved for rehearing. Both parties have either misinterpreted or misunderstood the holding of this Court. We attempted to make a distinction between the words intentionally, willfully and wantonly. We did not think it necessary to discuss willful or intentional because we did not think the appellants willfully or intentionally injured the appellees. There is little distinction between willful and intentional, as Webster defines willful as self-determined or desirous and intentional as pertaining to intention or design. We do not think appellants willfully or intentionally injured the appellees. Webster defines wanton as marked by or manifesting arrogant recklessness of justice of the rights of others. We then quoted Judge Critz in the case of Great Atlantic & Pacific Tea Co. v. Evans, 142 Tex. 1, 175 S.W.2d 249, 251, where he stated, "Negligence rests primarily upon two elements: (a) reason to anticipate injury, and (b) failure to perform the

duty arising on account of that anticipation." We thereby held the appellants could anticipate injury and owed the duty to appellees not to negligently injure such estate. After carefully considering both motions for rehearing they are both accordingly overruled.