247 F.Supp. 584 (1965)
William T. DEMPSEY
and
Anna M. Dempsey, Plaintiffs,
v.
ADDISON CRANE COMPANY, Inc., Defendant.
Civ. A. No. 818-63.
United States District Court District of Columbia.
November 24, 1965.
*585 Philip J. Lesser and I. Irwin Bolotin, Washington, D. C., for plaintiffs.
Ross O'Donoghue and George A. Fisher, Washington, D. C., for defendant.
HOLTZOFF, District Judge.
This is an action for personal injuries. As the trial has been without a jury, the Court has separated the issue of liability, reserving the issue of damages to be tried later in the event that the Court reached the conclusion that the defendant was liable to the plaintiff.
The male plaintiff was a pile driver employed on a construction project at the corner of 12th and E Streets in the Northwest section of Washington. The project was then in the excavating stage. On March 27th, 1962 the plaintiff's employer, who was the contractor erecting the building to be located at the site, rented a crane from the defendant, which was a concern in the business of renting and operating cranes for others. The crane arrived early in the morning of that day and was moved on the site of the excavation. The contractor's foreman directed the crane operator to move a welding machine that was located on the site and that apparently was interfering with the progress of the work.
The crane operator and his assistant proceeded to lift the welding machine by means of the crane, to shift it to a different location, and to let it down in the new place indicated. Four pile drivers, including the plaintiff, were holding the machine, each of them holding one corner, in order to prevent it from twisting. Just as the welding machine was about to come to rest in its new location, an auxiliary jib attached to the boom broke loose, fell, and hit and struck two of the pile drivers who were holding the corners of the machine. One of them was killed and the other, who is one of the plaintiffs in this action, was seriously injured.
The male plaintiff seeks to recover damages from the crane operator for the injuries sustained by him. The second plaintiff is his wife, who sues for loss of consortium.
At the outset it is necessary to summarize briefly the applicable rules of law of negligence. The defendant was not an insurer of the safety of his apparatus or of anyone coming in contact with or close to it. On the other hand, the defendant was under a duty to use due care in connection with the apparatus, such care as would be used by a prudent man under similar circumstances and conditions. Failure to use such due care is negligence, and if the negligence is a proximate cause of an injury to someone, the injured party may recover damages from the defendant. What constitutes due care under any particular set of circumstances depends on the risk involved and the hazards connected with the apparatus or activity in question. The degree of care that must be exercised by a person in charge of any apparatus depends upon possible consequences of negligence.
It is claimed in behalf of the plaintiffs that the defendant was negligent in two respects: first, in that he left the auxiliary jib suspended from the boom at a time when the auxiliary jib was not in actual use; and, second, in that the *586 means by which the jib was suspended and the apparatus which attached it to the boom were unsafe. Each of the two charges must be analyzed separately.
The operating member of the crane was a boom about 60 feet long, which could be shifted horizontally and lifted vertically, being raised or lowered at different angles. Attached to the boom was an auxiliary jib about 30 feet long. The purpose of the jib was for use as an extension piece, presumably for tasks for which the boom was not long enough.
It is claimed in behalf of the plaintiffs that it was negligence to permit the auxiliary jib to remain suspended from the boom when the boom was in operation but the jib was not in actual use, and that the safe practice was to detach the jib from the boom under those circumstances and to lay it on some supports to one side. There were expressions of opinion to that effect on the part of some witnesses. The Court reaches the conclusion, however, that the plaintiff has not sustained by a fair preponderance of the evidence the contention that there was any negligence in the failure to detach and remove the jib at the time when the boom was operating merely because the jib was not in actual use at that particular moment.
The second charge of negligence, however, requires greater consideration. That charge is that the means by which the jib was suspended from the boom were unsafe and that this lack of safety caused the accident. In considering this charge of negligence it is necessary to examine the apparatus in detail.
The boom was of metal latticework construction, so to speak, as was also the jib. Two slings were attached to the jib by which the jib was suspended from the boom. In order to hold the jib in place the slings were inserted through apertures in the metal framework of the jib and through similar apertures in the metal framework of the boom. When the boom was raised from a horizontal position, one of the two slings would be above the other. The slings were spaced in such a way as to hold the jib in place. Each sling consisted of a cable ending with a metal hook, one hook being at each end of the cable. The hooks were open at the bottom. They were not closed or fastened in any way. The hooks were suspended or placed on the framework of the boom, thus holding the jib in attachment to the boom.
The accident happened in the following manner. While the boom was at an angle and slowly setting the welding machine on the ground, one of the hooks on the upper sling somehow or other slipped from its connection. This, in turn, increased the load on the lower sling and the lower sling broke. The jib then fell, striking two of the men, as heretofore stated.
There was also in existence an alternative apparatus for attaching the jib to the boom. It consisted of shackles connected together, the shackles being at each end of the sling. In other words, the sling would form a closed loop instead of ending with an open hook at each terminus.
The evidence showed that the apparatus employed in this case was in wide use by the industry at the time of the accident and prior thereto, and, further, that some of the largest concerns in the crane renting business used apparatus of this type. On the other hand, there was also evidence that the alternative apparatus was available and had been in actual use, although on a smaller scale than the one involved in this case. The component parts of the alternative apparatus were readily available in hardware stores and were not expensive.
The slings connecting the jib with the boom are not standard equipment. They are not furnished with the crane, but each crane owner fabricates his own. In this instance the testimony is that the defendant made these slings in its own shop.
Two expert witnesses were called in behalf of the plaintiff. One was Charles Greene, who is the Director of the Industrial Safety Division of the Minimum *587 Wage and Industrial Safety Board of the District of Columbia. At the time of the accident he was connected with the Industrial Safety Division in a subordinate capacity and in the course of his employment personally investigated the accident. He testified that, upon investigating the accident, he found that one of the two slings had become dislodged and caused the second one to slip or break. He expressed the opinion that the apparatus used for suspending the jib from the boom in the instant case was unsafe because of the open hook arrangement, since an open hook may slip from its mooring. His view was that the shackle arrangement, as he called it, shown in the alternative apparatus, would provide the necessary safety for anything suspended from it. He also testified that he had seen the alternative arrangement in use on many occasions prior to the date of the accident.
The other expert witness was Professor Donald Marlowe, the Dean of the School of Engineering and Architecture of Catholic University. He testified that the apparatus used for carrying the jib in this instance was unsafe and that safety required that the hook should not be open. In his opinion the principal lack of safety lay in the fact that the hook was open and therefore could slip or become dislodged in case of vibration and other possible incidents. He further expressed the opinion that a safe apparatus for the purpose would be a cable with two shackles, one at each end, which would be connected in such a way that there would be no open space between them. He testified that shackles and the other components of the apparatus that he deemed safe were available and were standard equipment as far back as 1941.
In addition, he expressed the view that the specific apparatus used in this case was not properly fabricated, which enhanced its lack of safety. Thus, he testified that the hook was made out of iron plate, whereas shackles are fabricated of forged steel and that forged steel is a safer material for the purpose than iron plate. He also testified that the cable should have had what is known as a "thimble", in order to keep it from fraying, and that there was no such member in this instance. Finally, he called attention to the fact that the sling had only a single clamp near each hook, whereas in his opinion there should have been at least two or possibly even three. He concluded, however, that the basic defect was the open hook.
As has been stated, the evidence clearly shows that the apparatus of the type used in this instance was the prevailing apparatus employed in the industry at the time of the accident, although the alternative and the safer apparatus was also utilized, but to a much lesser extent. The fact that a particular apparatus or method is used by the industry is admissible in evidence on the issue of negligence, but it is by no means conclusive. Thus, in Wabash Railway Co. v. McDaniels, 107 U.S. 454, 461, 2 S.Ct. 932, 938, 27 L.Ed. 605, the Supreme Court stated:
"A degree of care ordinarily exercised in such matters may not be due or reasonable or proper care, and therefore not ordinary care, within the meaning of the law."
In the case of Texas & Pacific Railway Co. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905, the Supreme Court stated:
"What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."
The case of The T. J. Hooper (2 Cir.) 60 F.2d 737, an admiralty case, illustrates this point very vividly. The case involved a collision between two vessels, one of which was a coastwise tug. The tug had not been equipped with radio receiving sets and thus had been unable to receive a storm warning that had been broadcast over the radio. It was held that this failure constituted negligence. *588 The opinion was written by Judge Learned Hand, who said, in passing:
"It is not fair to say that there was a general custom among coastwise carriers so to equip their tugs. One line alone did it; as for the rest, they relied upon their crews, so far as they can be said to have relied at all."
And again he said:
"Is it a final answer that the business had not yet generally adopted receiving sets? There are, no doubt, cases where courts seem to make the general practice of the calling the standard of proper diligence; we have indeed given some currency to the notion ourselves * * * Indeed in most cases reasonable prudence is in fact common prudence; but strictly it is never its measure; a whole calling may have unduly lagged in the adoption of new and available devices. It never may set its own tests, however persuasive be its usages."
An accident that is very similar in its facts to that involved in this case confronted the Supreme Court of New Jersey in McComish v. DeSoi, 42 N.J. 274, 200 A.2d 116. In that case a piece of apparatus was being moved on a crane. The sling by means of which the apparatus was attached broke and two workmen were hurt, one fatally and the other injured. The question involved in that case, as it is here, was whether the means of attaching the apparatus to be moved was safe or not. The Court stated, at page 121:
"What ought to be done is fixed by the standard of reasonable prudence, and in law that requirement remains the same whether it is usually complied with or not. Thus, what is usually done in a particular industry cannot be regarded as what ought to be done unless the conduct and the test are in harmony."
This Court makes an ultimate finding of fact that the means and the apparatus by which the jib was attached to the boom were unsafe as of the date of the accident; that the use of this means constituted negligence on the part of the defendant; and that this negligence was the cause of the injuries to the plaintiff.
A few other considerations remain. It is not urged, and it could not be, that the plaintiff was guilty of any contributory negligence. He was at the place where the accident occurred in the performance of his duty and pursuant to the orders of his foreman. The fact that he did not run fast enough to get clear of the falling jib did not constitute negligence on his part, bearing in mind especially the rule that the burden of proof on the issue of contributory negligence is on the defendant.
So, too, it cannot be successfully asserted, and it is not asserted, as the Court understands it, that there was any assumption of risk on the part of the plaintiff. The plaintiff was not in a position to examine and ascertain the means by which the jib was fastened to the boom and therefore he cannot be said to have assumed any risk resulting from an improper means of attachment.
There remains to say a word concerning another case arising out of the same accident. It has been already stated that another workman was killed in the accident. An action was brought by his estate entitled Fay Socash as Administratrix of the Estate of William Socash v. Addison Crane Co., for wrongful death. This action was likewise tried without a jury before another Judge of this Court and terminated in favor of the defendant. The judgment was affirmed by the Court of Appeals in Socash v. Addison Crane Co., D.C.Cir., 346 F.2d 420, on the ground that the questions presented to the trial Judge were questions of fact and that his findings could not be set aside unless clearly erroneous, which they were not. The trial Judge in that case also held that the plaintiff was not entitled to recover substantial damages on the further ground that the deceased left no dependand *589 therefore the recovery, if any, would have been limited to the expenses of the hospitalization and burial of the deceased.
Naturally, just as two juries may reach different conclusions on the same facts, so may two judges do likewise. Here, however, the evidence in the two actions was not the same. Testimony was presented at this trial which it is understood from counsel had not been introduced in evidence at the trial of the Socash case. It should be noted that the plaintiffs in this case are represented by different counsel than the plaintiff in the Socash case.
Accordingly, the Court concludes that the defendant is liable to the two plaintiffs for the damages sustained by each of them as a result of the accident involved in this action and the trial will be resumed on the issue of damages.